531 So.2d 1004 (1988)
Michael Blair BYRD, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 87-1266.
District Court of Appeal of Florida, Fifth District.
September 22, 1988.
*1005 James P. Gibson, Public Defender and Christopher S. Quarles, Asst. Public Defender, Daytona Beach, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee/cross-appellant.
DANIEL, Judge.
Michael Byrd appeals a judgment and sentence for vehicular homicide challenging the sufficiency of the evidence. The state cross appeals challenging the downward departure in Byrd's sentence. We affirm the conviction but reverse the sentence and remand the cause for resentencing.
The evidence at trial reflects that on December 23, 1985, at around noon, Byrd and his coworker David Williams were traveling from Deland to New Smyrna Beach on State Road 44 in their company's red Toyota pickup truck. The pickup truck was traveling east in the left or passing lane of State Road 44 which, at this point, is a four lane highway.
As the pickup truck got closer to town, Williams told Byrd that there were several cars stopped up ahead. Byrd stepped on the brakes and the truck swerved to the left, struck the median, became airborne and hit a car traveling in the opposite direction in the far westbound lane. The other car was totalled and its driver was killed. After the accident, witnesses testified that they overheard Williams saying that he kept telling Byrd to slow down and that Byrd had been driving recklessly.
Trooper Wingard, who conducted the homicide investigation, testified that there were numerous housing developments and some business establishments immediately west of the scene of the accident. Trooper Wingard also testified that a "reduced speed sign" and a 45 miles per hour speed sign were posted less than one-half mile west of the accident. According to Trooper Wingard, the day was dry and clear and the road was dry. Based on measurements taken at the scene of the accident and using acceptable accident reconstruction techniques, Trooper Wingard estimated that Byrd's pickup truck was traveling at 81 miles per hour when it started to skid. Trooper Wingard found no evidence of braking by the pickup truck. On cross examination, Trooper Wingard stated that blood tests showed that Byrd had not been drinking.
Trooper Gerald Thomas, who conducted the accident investigation at the scene, testified *1006 that he charged Byrd with careless driving rather than reckless driving. Trooper Thomas estimated Byrd's speed at 70 plus miles per hour based on the statements of witnesses and his observations at the scene of the accident.
John Murdoch, an accident reconstruction expert, testified for the defense that he disagreed with Trooper Wingard's conclusion that Byrd was traveling at 81 miles per hour. According to Murdoch's calculations, Byrd was traveling at around 47 to 48 miles per hour. On cross examination, Murdoch admitted that the measurements he used resulted in the average speed that Byrd's vehicle was traveling during the time he lost control of it as opposed to the speed the vehicle was going as Byrd started to slide sideways.
On rebuttal, Trooper Wingard testified that he disagreed with Murdoch's method of calculation because it resulted in a greatly reduced entry speed. Based on the damage done to the other vehicle and the distance traveled by the pickup truck, Trooper Wingard estimated that Byrd's vehicle had to be traveling in excess of 50 miles per hour.
The jury found Byrd guilty of vehicular homicide. Byrd's recommended guidelines sentence was three to seven years incarceration. The trial court departed downward and sentenced Byrd to two years community control followed by five years probation.
On appeal, Byrd contends that the state merely showed excessive speed and that by itself is not sufficient to support a conviction for vehicular homicide. This argument is without merit.
Vehicular homicide requires that the defendant operate a motor vehicle in a reckless manner likely to cause the death of or great bodily harm to another, and that there be a causal relationship between that recklessness and the victim's death. Higdon v. State, 465 So.2d 1309 (Fla. 5th DCA 1985), quashed on other grounds, 490 So.2d 1252 (Fla. 1986). The degree of negligence necessary to sustain a conviction for vehicular homicide falls short of culpable negligence but is more than a mere failure to use ordinary care. McCreary v. State, 371 So.2d 1024 (Fla. 1979).
In the present case, the jury could have reasonably found that Byrd was traveling at 81 miles per hour or close to twice the speed limit for that area. The jury could also have found that the traffic at around noon two days before Christmas was heavy. The evidence was undisputed that Byrd had been told to slow down as he went through a caution light and had just passed a reduced speed sign and a 45 mile per hour speed sign less than one-half mile before the accident. The jury could also have found that Byrd was not paying attention as he tried to stop his vehicle only about six to ten feet behind a stopped car. Byrd's vehicle hit a car in the opposite lane of traffic, killing the driver on impact. This evidence is sufficient to show that Byrd killed another human being by the operation of a motor vehicle in a reckless manner likely to cause the death of or great bodily harm to another. See Johnson v. State, 92 So.2d 651 (Fla. 1957).
On cross appeal, the state argues that the reasons for the downward departure from Byrd's recommended guidelines sentence were not clear and convincing. We agree.
The probation officer apparently assigned to investigate this matter recommended that Byrd be placed on community control for two years followed by three years probation. In a letter to the trial judge, the probation officer set out his reasons for this recommendation:
(1) The Nine Points which placed the defendant in the Prison Sanction in accordance with the Sentencing Guidelines, are a result of a combination of Misdemeanors, which included, "Clogging A Toll Booth" and "Being On A Legal Restraint". Through [sic] appropriately scored, could certainly be reviewed in my opinion as marginal additional points, which may provide for midagation [sic] in this matter in terms of sentencing.
(2) I have contacted the Highway Patrol Troopers who investigated this incident and who testified in this Trial. Both *1007 Troopers Thomas and Wingard have respresented [sic] to me that they would not recommend Prison as a Sentencing Sanction for the defendant in this matter.
(3) The factual information contained in this Case, in my opinion, is questionable at best. The issues in which the Jury came to their conclutions [sic] seemed to me the highly technical complex, i.e., Force, Energy, Mass and Complex Mathematical Formuals, [sic] which determined Skid Marks, Rate of Speed, etc., presented to the Jury. It was my observation that the presentation may have contributed significantly to the conclution [sic] and not necessarily the factual basis.
(4) If Sentenced as recommended, the defendant would remain under close supervision for a longer period of time, which would act as a deterrent for future criminal behavior, in addition expose the defendant to a series of self-help programs which may altermately [sic] led [sic] to prevention of a second victim in this matter. Community Control Sentencing alternative available to the Court, as you are aware, benifits [sic] both the tax paying citizens and the defendant. Community Control Sanction is by design both punitive and character building in terms of self discipline and personal restriction.
The trial court departed downward from the recommended guidelines sentence and sentenced Byrd to two years of community control followed by five years probation. The trial court adopted the reasons from the probation officer's letter as the basis for departure.
A sentence outside the guidelines, even if less than the recommended range, must be accompanied by clear and convincing reasons for departure. State v. Wright, 473 So.2d 268 (Fla. 1st DCA 1985). The first reason concerns Byrd's prior record. A defendant's record or lack of one is not a valid reason for departure because that factor is already taken into consideration in the guideline calculation. State v. Taylor, 482 So.2d 578 (Fla. 5th DCA 1986). The second reason is that the state troopers who investigated this incident would not recommend prison. This is not a valid reason for departure. See Montgomery v. State, 489 So.2d 1225 (Fla. 5th DCA 1986) (recommendation of a probation officer was not a valid reason for a departure sentence). The third reason, that the factual information is questionable at best, suggests that the trial court may have disagreed with the conclusion reached by the jury. In State v. Joiner, 498 So.2d 1017 (Fla. 5th DCA 1986), this court held that a judge's personal view of the lack of credibility of the testimony is not a clear and convincing reason for a downward departure where the jury has determined otherwise. The fourth reason, that Byrd would remain under close supervision for a longer period of time and would have access to self-help programs which benefits both the taxpaying citizen and the defendant, is also invalid. See Kendricks v. State, 508 So.2d 532 (Fla.2d DCA 1987) (trial court's imposition of probation in order to have more control over defendant invalid reason for downward departure); State v. Daughtry, 505 So.2d 537 (Fla. 4th DCA 1987) (fact that departure sentence keeps defendant longer under judicial control would not be acceptable reason for departure); State v. Peters, 500 So.2d 704 (Fla. 1st DCA 1987) (concern for social cost of incarceration not valid reason for departure sentence). See also Fla.R.Crim.P. 3.701(b)(2) ("The primary purpose of sentencing is to punish the offender. Rehabilitation and other traditional considerations continue to be desired goals of the criminal justice system but must assume a subordinate role."). Since all four reasons for departure are invalid, Byrd's sentence is reversed and the cause remanded for resentencing within the recommended guideline sentence. See Shull v. Dugger, 515 So.2d 748 (Fla. 1987) (when all reasons stated by the trial court in support of departure are found invalid, resentencing must be within the presumptive guidelines range).
CONVICTION AFFIRMED; SENTENCE REVERSED and REMANDED for *1008 resentencing.[1]
COBB and COWART, JJ., concur.
NOTES
[1] As to the applicability of the 1988 sentencing guidelines amendments, see Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); Art. X, § 9, Fla. Const. and Castle v. State, 330 So.2d 10 (Fla. 1976).