661 So.2d 309 (1995)
Charles D. BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 93-3094.
District Court of Appeal of Florida, First District.
July 26, 1995.
Nancy A. Daniels, Public Defender; Kathleen Stover, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen.; Giselle Lylen Rivera, Asst. Atty. Gen., Tallahassee, for appellee.
*310 BENTON, Judge.
The verdict on which Charles D. Brown was convicted of attempted manslaughter with a firearm came about in two stages. An amended verdict found for the first time that Mr. Brown used a firearm. Although evidence supports such a finding, procedural irregularities require reversal of the judgment based on the revised verdict. We remand with directions that the judgment of conviction be made to conform to the (initial) product of the jury's deliberation.
Appellant stood trial on charges he attempted to murder his wife with a firearm. The jury found him guilty of attempted manslaughter, a lesser included offense. See Taylor v. State, 444 So.2d 931 (Fla. 1983); Williams v. State, 41 Fla. 295, 26 So. 184 (1899). After the jury had been discharged and all six members of the jury had left the courtroom, it came to the attention of the trial court that the jury had left certain boxes on the verdict form blank. The jury had not indicated in any way whether or not they had concluded that appellant had used a firearm in committing the crime. Attempted manslaughter with a firearm is a felony of the second degree, § 775.087(1), Fla. Stat. (1991), while attempted manslaughter in which a firearm plays no part is a felony of the third degree. §§ 777.04(4)(e), 782.07, Fla. Stat. (1991).
At the trial judge's behest, the bailiff went in search of the jurors, five of whom eventually returned to the courtroom. The sixth was not to be found. First to return was the foreman, Mr. Kilbourn. Before the others arrived, the trial judge asked Mr. Kilbourn about the jury's deliberations. In response to these questions, Mr. Kilbourn reported that the jury had all agreed that appellant used a gun in committing the crime.
When the bailiff returned with four more jurors, the trial judge directed questions to them. Their answers were to the effect that no formal vote had been taken on the firearm question, but that they had discussed how many times the gun was fired. One juror stated that the jurors "took for granted" that a firearm had been involved. Mr. Kilbourn assured the trial court that the absent juror had no doubt that a firearm had been used. The trial court then caused the blank boxes to be marked to indicate the use of a firearm and the foreman signed the verdict a second time.
While obviously an effort made in good faith to find and report the truth, this procedure runs afoul of the "rule that once the jury has been discharged it cannot be reimpaneled to hear any matters relating to the same case. Lee v. State, (Supreme Court of Florida) 294 So.2d 305 (1974)." Masters v. State, 344 So.2d 616, 619 (Fla. 1st DCA 1977). See State v. Cleare, 591 So.2d 1019, 1021 (Fla. 3d DCA 1991). The record does not reflect whether anybody discussed the case with any of the jurors after the jury was discharged and before the jurors were interrogated. On such a record, the jury cannot be said to have "retain[ed] its functions, though discharge may have been spoken by the court, ... [because] it remain[ed] an undispersed unit, within the control of the court, with no opportunity to mingle with or discuss the case with others." Summers v. United States, 11 F.2d 583, 586 (4th Cir.1926), cert. denied, 271 U.S. 681, 46 S.Ct. 632, 70 L.Ed. 1149 (1926). These jurors, unlike those in Masters or State v. Blasi, 411 So.2d 1320 (Fla. 2d DCA 1981) had "in fact separated and gone their separate ways." Masters, 344 So.2d at 620.
Florida law does not contemplate spontaneous judicial inquiry of jurors to elicit an explanation for their failure to find a criminal defendant guilty. Here no "motion alleges juror misconduct." Sconyers v. State, 513 So.2d 1113 (Fla. 2d DCA 1987). See Roland v. State, 584 So.2d 68 (Fla. 1st DCA 1991). Once "reimpanelled," the jurors who recounted events in the jury room responded to interrogation about what had already transpired, rather than beginning deliberations anew. What took place here differed materially, however, from a belated polling of the jury as to a verdict already rendered. Cf. James v. State, 453 So.2d 786 (Fla. 1984); Chung v. State, 641 So.2d 942 (Fla. 5th DCA 1994); State v. Thomas, 405 So.2d 220 (3d DCA 1981), review denied, 415 So.2d 1361 (Fla. 1982). An important purpose for the rule against a jury's reassembling after discharge *311 is to protect against improper influences. However well meaning, a judge's unauthorized questioning may itself have an improper influence.
The post-discharge inquiry was not narrowly limited to determining whether a verdict duly arrived at had been misrecorded. Cf. Blasi, Masters. "A jury verdict is sacrosanct unless clerical mistakes or outside influences thwart return of the jury's intended verdict." Robinson v. MacKenzie, 508 So.2d 1285, 1286 (3d DCA 1987), review denied sub nom. MacKenzie v. Robinson, 518 So.2d 1276 (Fla. 1987). The inquiry here ranged broadly over the substance of the jury's deliberations, without focussing on the essential preliminary question whether the jury had actually reached a verdict on the firearm charge. Whether an individual juror has assented to a verdict is a matter said "essentially [to] inhere in the verdict itself." Russ v. State, 95 So.2d 594, 600 (Fla. 1957). Accord, State v. Ramirez, 73 So.2d 218 (Fla. 1954); Parker v. State, 336 So.2d 426 (1st DCA 1976), appeal dismissed, 341 So.2d 292 (Fla. 1977).
No rule is better established in this jurisdiction than that which precludes a juror from impeaching his own verdict by testimony as to motives and influences by which the deliberations of the jury were governed, where no illegal or formal misconduct is involved. Coker v. Hayes, 16 Fla. 368 [(1878)]; Godwin v. Bryan, 16 Fla. 396 [(1878)]; McMurray v. Basnett, 18 Fla. 609 [(1882)]; Kelly v. State, 39 Fla. 122, 22 So. 303 [(1897)]; Langford v. King Lumber & Mfg. Co., 123 Fla. 855, 167 So. 817 [(1936)]; Hamp v. State, 130 Fla. 801, 178 So. 833 [(1938)]; Johnson v. State, 144 Fla. 87, 197 So. 721 [(1940)].
Dempsey-Vanderbilt Hotel, Inc. v. Huisman, 153 Fla. 800, 805-06, 15 So.2d 903, 905-06 (1943); Johnson v. State, 593 So.2d 206, 210 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992); Mitchell v. State, 527 So.2d 179, 181 (Fla.), cert. denied, 488 U.S. 960, 109 S.Ct. 404, 102 L.Ed.2d 392 (1988). The rule applies with even more force in criminal proceedings, if double jeopardy considerations come into play. Smith v. State, 330 So.2d 59, 60-61 (Fla. 1st DCA 1976). But see Blasi. In a sense, these jurors were asked to disavow the nonexistence of a verdict rather than to impeach a verdict already in existence. But the rule is "that the mental processes by which a juror arrives at his conclusion in any given case is not a matter that can be inquired into." Van Eaton v. State, 205 So.2d 298, 300 (Fla. 1967).
The procedure that was followed in this case deprived appellant of his right to trial by jury on the firearm element of the charge. United States v. Gaudin, ___ U.S. ___, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). Not only was the verdict on this question formulated after the trial and with the participation of the trial judge, only five jurors were on hand. In a jury trial, "the truth of every accusation ... should ... be confirmed by the unanimous suffrage ... of [the defendant's] equals and neighbors... ." 4 W. Blackstone, Commentaries on the Laws of England 343 (1769); Art. I, § 16(a), Fla. Const. (1968); § 775.01, Fla. Stat. (1991). A juror cannot vote by proxy. Appellant did not waive his right to trial by a jury composed of six of his peers. See Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979); Jones v. State, 92 So.2d 261 (Fla. 1956); Flanning v. State, 597 So.2d 864 (Fla. 3d DCA 1992).
Appellant also contends that his conviction for attempted manslaughter should be reversed on grounds that ambiguities in the jury instructions might have led to a conviction even if the jury had concluded that he was guilty of no more than culpable negligence. We do not reach the merits of this contention on this record. Murray v. State, 491 So.2d 1120 (Fla. 1986); Tillman v. State, 471 So.2d 32 (Fla. 1985); Taylor. Sufficient evidence to show criminal intent was adduced. Trial counsel made no request for a jury instruction on this subject which was not given, and lodged no objection to the instructions that were given.
While Judge Russell signed the judgment and sentence on appeal, another judge presided at trial and sentencing. This substitution raises questions under Florida Rule of Criminal Procedure 3.700(c)(1) and Campbell v. State, 622 So.2d 603 (Fla. 2d DCA 1993), *312 which we need not address in light of disposition on other grounds.
We reverse and remand with directions that appellant be adjudicated guilty of attempted manslaughter and resentenced in accordance with section 775.082, Florida Statutes (1991), without reference to section 775.087, Florida Statutes (1991).
JOANOS and LAWRENCE, JJ., concur.