692 So.2d 199 (1997)
Javier E. MARTINEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 96-165.
District Court of Appeal of Florida, Third District.
January 29, 1997.
Order Denying Rehearing April 23, 1997.
*200 Linda L. Carroll and Gregory A. Wald, Miami, for appellant.
Robert A. Butterworth, Attorney General, and Sylvie Perez Posner, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and COPE and FLETCHER, JJ.
COPE, Judge.
Javier E. Martinez appeals his conviction for vehicular homicide. We affirm.
Defendant-appellant Martinez contends that the evidence was legally insufficient to convict him of vehicular homicide. "`Vehicular homicide' is the killing of a human being by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another." § 782.071(1), Fla.Stat. (1993). See generally McCreary v. State, 371 So.2d 1024 (Fla.1979). In determining whether the evidence is legally sufficient, the evidence must be viewed in the light most favorable to the state. State v. Law, 559 So.2d 187, 189 (Fla.1989).
On the night of the fatality, defendant drove northbound on Old Cutler Road in Coral Gables. Defendant was driving at an estimated 70 miles per hour in a 30 mile-per-hour zone, in a curving section of road. There was a continuous double yellow line, indicating that it was a no-passing zone. While passing another vehicle, defendant's car struck a median, proceeded across the southbound lane of traffic, and landed on top of a rock wall on the side of the road. A tree branch entered the car, impaling a passenger and causing his death. The facts just stated are legally sufficient for conviction under the vehicular homicide statute, and meet or exceed the level of recklessness involved in McCreary v. State, 371 So.2d at 1026-27, and Savoia v. State, 389 So.2d 294 (Fla. 3d DCA 1980).
Defendant relies on R.C.G. v. State, 362 So.2d 166 (Fla. 2d DCA 1978), but the state correctly points out that R.C.G. applied a manslaughter standard to the vehicular homicide statute. In that respect, R.C.G. does not survive the Florida Supreme Court's later decision in McCreary, which rejected the application of the manslaughter standard in vehicular homicide cases. 371 So.2d at 1025-27. The standard of proof in vehicular homicide cases is lower than the manslaughter standard. Id. Since the R.C.G. court applied the higher manslaughter standard, the R.C.G. decision sheds no light on whether the facts of that case would be legally sufficient to support a conviction for vehicular homicide. The R.C.G. case is also factually distinguishable; the R.C.G. court noted that the motorcycle accident may have been caused by a sudden shift of weight by the motorcycle passenger, which in turn caused the inexperienced driver to lose control. 362 So.2d at 168.
Defendant also relies on W.E.B. v. State, 553 So.2d 323 (Fla. 1st DCA 1989), but in that case the court concluded that the defendant was at most guilty of negligence in "overcorrecting from having driven off the shoulder of the road." Id. at 327 (emphasis omitted). The factual circumstances of the present case are of greater severity than those outlined in W.E.B.
Defendant next argues that the trial court erred by admitting the opinion testimony of lay witnesses about the speed of defendant's vehicle at the time of the accident. The state called as witnesses the driver and passenger in the motor vehicle which the defendant was passing at the time of the accident. Both individuals were licensed drivers with several years of driving experience and both estimated defendant's speed at about 70 miles per hour as he passed them.
"Testimony in the form of opinion by a nonexpert witness, qualified by opportunity for observation, is admissible to prove the speed of a vehicle, animal, or object." 1 Spencer A. Gard, Florida Evidence § 12.04, at 421 (1980). There was no abuse of discretion in admitting the testimony.
Defendant contends that the trial court erred by admitting the results of his *201 blood alcohol test which indicated a .03 level. A toxicologist extrapolated that the level would have been .05 at the time of the accident. Defendant asserts that since this was a prosecution for reckless driving, and not a prosecution for driving under the influence (DUI) or DUI manslaughter[1], evidence of alcohol consumption was inadmissible. To the contrary, it has been held that evidence of alcohol consumption is a factor the trial court is entitled to consider in a reckless driving prosecution. W.E.B. v. State, 553 So.2d at 326. Evidence of alcohol consumption was among the matters presented to the jury in such cases as McCreary v. State, 371 So.2d at 1025, Savoia v. State, 389 So.2d at 295, and R.C.G. v. State, 362 So.2d at 166, although the question of admissibility was not discussed.
Defendant makes a related argument that the trial court erred by instructing the jury on the statutory presumptions for blood alcohol levels. See § 316.1934(2), Fla.Stat. (1993). By virtue of the instruction, the jury was aware that for the .03 and .05 levels, it was presumed that the defendant was not impaired. See id. § 316.1934(2)(a). Defendant contends that this instruction should not have been given, but as we view the record, trial counsel took the position that if the blood alcohol test results were going to be admitted into evidence over defense objection, then defendant wanted the jury to be instructed regarding the statutory presumptions. Defendant will not now be heard to complain. Moreover, it would appear that the giving of this instruction was helpful, rather than harmful, to the defense.
Defendant argues alternatively that the evidence regarding consumption of alcohol and prescribed medicine should have been excluded under section 90.403, Florida Statutes, which provides that relevant evidence is inadmissible, inter alia, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, [or] misleading the jury...." At trial the State adduced evidence that at the time of the accident defendant was taking a prescription drug which carries a warning not to operate a motor vehicle. Defendant's objection was addressed to the sound discretion of the trial court, and under the circumstances, we see no abuse of that discretion.
Defendant asserts that his sentence exceeds the legal maximum. Defendant was convicted of vehicular homicide under subsection 782.071(1), Florida Statutes, which is a third degree felony. While the maximum legal sentence for a third degree felony is five years, id. § 775.082(3)(d), the crime in this case was committed on July 23, 1994, and the 1994 sentencing guidelines are therefore applicable. Under the 1994 guidelines, "[i]f a recommended sentence under the guidelines exceeds the maximum sentence otherwise authorized by s. 775.082, the sentence under the guidelines must be imposed, absent a departure." § 921.001(5), Fla.Stat. (1993). The recommended guidelines range in this case was 4.6 years to 7.7 years. The trial court imposed a sentence of six and one half years incarceration followed by one year of probation. This is a legal sentence under the 1994 guidelines. Delancy v. State, 673 So.2d 541 (Fla. 3d DCA 1996).
Defendant takes issue with Delancy and argues that the five-year statutory maximum applies in this case. He reasons that the recommended sentence does not exceed the five-year legal maximum because the bottom of the guidelines range is 4.6 years. He contends that so long as the bottom of the recommended range is below the ordinary legal maximum (in this case, five years), then the court cannot impose sentence above the ordinary legal maximum. We do not think that defendant's argument is consistent with the wording of the statute, or with its intent. The statute begins by stating, "If a recommended sentence under the guidelines exceeds the maximum sentence otherwise authorized by s. 775.082...." § 921.001(5), Fla.Stat. In this case the top end of the recommended range is 7.7 years, and thus the recommended sentence exceeds the ordinary legal maximum. Further, in our view the legislative intent is to allow the trial court the full use of the recommended range unencumbered by the ordinary legal maximum.
*202 Defendant next claims that there is a scoring error in calculating the recommended sentence. Defendant argues that the recommended guidelines sentence of seventy-four months can only be increased by 15 percent in order to calculate the guidelines range. See § 921.0014(1), Fla.Stat. (1993). Defendant misreads the statute. The statute provides that "[t]he recommended sentence length in state prison months may be increased by up to, and including, 25 percent or decreased by up to, and including, 25 percent, at the discretion of the court." Id. The statute goes on to explain that the 25 percent range is not available if the trial court has already availed itself of its discretionary power to increase the total sentence points by up to 15 percent where the initial total sentence points are forty or less. See id. However, the defendant in this case scored 102 points, and the 15 percent discretion allowed by the statute was not available to, or invoked by, the trial court. The calculation of the guidelines range is correct.
Finally, the defendant argues that the trial court erred by scoring sixty points for victim injury, which is the score where death has resulted. Relying on Thornton v. State, 683 So.2d 515 (Fla. 2d DCA 1996), defendant claims that the death of the victim cannot be scored because death or great bodily harm is an element of the offense of vehicular homicide. We disagree.
Under the 1994 guidelines:
"Victim injury" means the physical injury or death suffered by a person as a direct result of the primary offense, or any offense other than the primary offense, for which an offender is convicted and which is pending before the court for sentencing at the time of the primary offense.
§ 921.0011(7), Fla.Stat. (1993). Section 921.0014, Florida Statutes, creates the sentencing guidelines worksheet and calls for the scoring of the offense(s) plus victim injury. This is spelled out in Florida Rule of Criminal Procedure 3.702(d)(5) which states:
"Victim injury" is scored for physical injury or death suffered by a person as a direct result of any offense pending before the court for sentencing....
Victim injury shall be scored for each victim physically injured and for each offense resulting in physical injury whether there are one or more victims. However, if the victim injury is the result of a crime of which the defendant has been acquitted, it shall not be scored.
Since the rule and the statute specifically call for the scoring of victim injury, the death of the victim was properly scored in this case.
We decline to follow the Second District decision in Thornton v. State. In Thornton the defendant moved for postconviction relief, claiming scoresheet error in sentences imposed in 1992. Defendant relies on a portion of the Thornton opinion which states:
In the order denying further relief upon rehearing, the trial court concedes that it was error to include forty-eight points on the scoresheet for victim injury; the primary offense had already been enhanced because injury or death is an element of the offense. Byrd v. State, 531 So.2d 1004 (Fla. 5th DCA 1988); see Hendsbee v. State, 497 So.2d 718 (Fla. 2d DCA 1986); Benedict v. State, 475 So.2d 1000 (Fla. 5th DCA 1985).
683 So.2d at 516.[2]
To begin with, the Thornton decision analyzes the pre-1994 version of the guidelines. The question of how to score victim injury depends on the wording of the guidelines.
However, the pre-1994 guidelines are similar to the 1994 guidelines in the scoring of victim injury. Under Florida Rule of Criminal Procedure 3.701, which governs the pre-1994 guidelines, "Victim injury shall be scored for each victim physically injured during a criminal episode or transaction, and for each count resulting in such injury whether there are one or more victims." Fla. R.Crim.P. 3.701(d)(7) (1992).[3] The 1988 committee notes state:

*203 (d)(7) This provision implements the intention of the commission that points for victim injury be added for each victim injured during a criminal transaction or episode. The injury need not be an element of the crime for which the defendant is convicted, but is limited to physical trauma. However, if the victim injury is the result of a crime for which the defendant has been acquitted, it shall not be scored.
The pre-1994 scoresheet forms call for assessment of victim injury points in addition to the points assigned to the primary and additional offenses at conviction. Fla. R.Crim.P. 3.988 (1992).
The Thornton decision does not discuss the language of Rule 3.701 or the committee notes. Instead, Thornton relies on Byrd v. State, 531 So.2d 1004 (Fla. 5th DCA 1988), and Hendsbee v. State, 497 So.2d 718 (Fla. 2d DCA 1986), both of which are sentencing guidelines departure cases. In Byrd there was a downward departure based, in part, on defendant's lack of prior record. The Byrd court said, "A defendant's record or lack of one is not a valid reason for departure because that factor is already taken into consideration in the guideline calculation." 531 So.2d at 1007 (citation omitted). That is a correct statement of law, but it does not address whether victim injury is to be scored.
Similarly, the Thornton court cited Hendsbee v. State, also a departure case. There the court said:
An element of aggravated battery, victim injury, is scored on the scoresheet. Victim injury may not be figured into the scoresheet and also used to depart from the sentencing guidelines.
497 So.2d at 718 (citations omitted). The point was that since victim injury had been scored, victim injury could not be used as a reason for departure from the guidelines. The Hendsbee decision does not support the proposition that victim injury is not to be scored. The court made the comment that victim injury is an element of aggravated battery because prior to July 1, 1987, the sentencing guidelines provided that, "[v]ictim injury shall be scored if it is an element of any offense at conviction." Fla.R.Crim.P. 3.701(d)(7) (1985).[4]Hendsbee was decided in 1986.
The final case relied on by Thornton is Benedict v. State, decided in 1985. The defendant in Benedict had been convicted of failing to stop and render aid and give information after an accident resulting in injury or death, in violation of sections 316.027 and 316.062, Florida Statutes. The question in Benedict was whether victim injury points had been properly scored. Since the guidelines at that time called for victim injury points to be scored only if it is an element of any offense at conviction, Fla.R.Crim.P. 3.701(d)(7) (1985), and since it was not an element of Benedict's crimes that the defendant have killed or injured someone else, the Benedict court ruled that victim injury points had been improperly scored. 475 So.2d at 1001. Benedict hinges, in other words, on the wording of the pre-July 1, 1987, sentencing guidelines  a version of the guidelines which was not in force at the time of the Thornton decision, nor at the time the defendant committed his crime in the present case. Benedict does not support the proposition for which Thornton cites it.[5]
In sum, we conclude that Thornton is wrongly decided and certify direct conflict with it. Victim injury is to be scored in accordance with the text of the applicable sentencing guidelines. In the present case, victim injury has been properly scored under Rule 3.702 and subsections 921.0011(7) and 921.0014(1), Florida Statutes (1993).
Affirmed; direct conflict certified.

*204 On Motion for Rehearing

COPE, Judge.
By motion for rehearing defendant argues that there has been a change in terminology under the 1994 sentencing guidelines. He points out that subsection 921.001(5), Florida Statutes (1993), refers to a "recommended sentence," id., not a recommended range. Defendant's recommended sentence was 4.6 years. Since this is less than the 5-year legal maximum for a third degree felony, defendant again presses his argument that the trial court did not have the latitude under the 1994 guidelines to exceed the legal maximum.
In our view, the defendant argues a distinction without a legal difference. Under subsection 921.0014(1), Florida Statutes (1993), "The recommended sentence length in state prison months may be increased by up to, and including, 25 percent or decreased by up to, and including, 25 percent, at the discretion of the court." The recommended sentence is, therefore, the full range from minus 25 percent to plus 25 percent. It is accurate to describe this as a recommended range, and the term "range" continues to be used elsewhere in the guidelines statute. See id. § 921.001(6) (referring to "the range recommended by the guidelines").
After defining the "recommended sentence," id. § 921.0014(1), to include the 25 percent increase and 25 percent decrease, the statute goes on to say, "If a recommended sentence under the guidelines exceeds the maximum sentence otherwise authorized by s. 775.082, the sentence recommended under the guidelines must be imposed absent a departure." Id. § 921.0014(1). When increased by 25 percent, the defendant's recommended sentence was 7.7 years, which exceeds the 5year legal maximum. The trial court was entitled to impose the sentence that it did.
Rehearing denied.
NOTES
[1] § 316.193(3)(c)3, Fla.Stat. (1993).
[2] Operating on the premise that the defendant had been scored incorrectly, the court ordered that Thornton be resentenced. Id.
[3] Although immaterial in the present case, the phrase "and for each count resulting in injury whether there are one or more victims" was added in 1991. See Florida Rules of Criminal Procedure re: Sentencing Guidelines (Rules 3.701 and 3.988), 576 So.2d 1307, 1308-09 & fn* (Fla. 1991).
[4] Effective July 1, 1987, Rule 3.701(d)(7) was amended to read, "Victim injury shall be scored for each victim physically injured during a criminal episode or transaction." Florida Rules of Criminal Procedure re: Sentencing Guidelines (rules 3.701 and 3.988), 509 So.2d 1088, 1089 (Fla.1987); see also Karchesky v. State, 591 So.2d 930, 932 (Fla.1992).
[5] Even if the pre-July 1, 1987 version of the sentencing guidelines were still in effect, victim injury points would be properly scored in the present case. The death of the victim is an element of the crime of vehicular homicide under section 782.071, Florida Statutes.