737 So.2d 1145 (1999)
Kenneth J. ACKERMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 97-4894.
District Court of Appeal of Florida, First District.
June 22, 1999.
Rehearing Denied July 28, 1999.
*1146 Barry W. Beroset of Beroset & Keene, Pensacola, for Appellant.
Robert A. Butterworth, Attorney General; Edward C. Hill, Jr., Assistant Attorney General; James W. Rogers, Assistant Attorney General, Bureau ChiefCriminal Appeals, Tallahassee, for Appellee.
BENTON, J.
Kenneth J. Ackerman appeals his conviction for "DUI Manslaughter-Leaving the Scene" in violation of section 316.193(3)(c)3.b., Florida Statutes (1997). He contends that the evidence was insufficient, and that the trial court erred in instructing the jury that it could convict of only one lesser-included offense, and further erred in denying his motion for new trial on grounds that access to a Bible tainted the jury's verdict. He also attacks his sentence on grounds his scoresheet was improperly calculated. We affirm.

I.
At about two o'clock on the morning of June 7, 1997, after visits to the Beef & Ale and Banana Bob's, Mr. Ackerman hit Chad Cowen, a pedestrian, killing him. There were no skid marks at the scene of the accident. According to the state's accident reconstructionist, Mr. Cowen was headed east on foot and was in a northbound lane of Ninth Street in Pensacola, about four feet from the eastern edge of the roadway at the time of impact.
When the car struck him, Mr. Cowen landed on the hood, his head striking the bottom of the windshield with sufficient force to crack it. The collision caused substantial additional damage to the front of the car. A person nearby awoke at the sound of the impact, which he described as a loud noise. But Mr. Ackerman testified that all he heard was a sound like "a thud, a dull thud" and that he never saw Mr. Cowen. That is why, he testified, he did not stop to render aid or give information.
When he reached home, however, he telephoned his brother and told him that he might have had an accident. His brother drove to the scene of the accident and saw several police cars, left, picked Mr. Ackerman up, and returned with him to the scene. As a passenger in his brother's car, Mr. Ackerman arrived some thirty-five to forty-five minutes after the accident occurred.
Believing he might be intoxicated, investigating officers took Mr. Ackerman to a hospital so that blood and urine samples could be collected. Tests done on blood drawn at about 4:35 on the morning of the accident indicated a blood alcohol level of.16 percent, twice the legal limit. Mr. Ackerman attributed this to a glass of scotch whiskey he said he drank when he got home after the accident. But a forensic toxicologist testified that, even if Mr. Ackerman drank three shots of whiskey after the accident, his blood alcohol level at the time of the accident was no less than.10 percent and might have been as high as.17 percent.

II.
The evidence sufficed to prove Mr. Ackerman guilty of manslaughter while *1147 driving under the influence of alcohol and of failing to stop to render aid and give information. See Tibbs v. State, 397 So.2d 1120, 1123 (Fla.1981) ("As a general proposition, an appellate court should not retry a case or reweigh conflicting evidence submitted to a jury or other trier of fact. Rather, the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment." (footnote omitted)), affirmed, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); Barton v. State, 704 So.2d 569, 571 (Fla. 1st DCA 1997).
The state put on evidence from which the jury could have concluded that the manner in which Mr. Ackerman operated his vehiclenotably failing to brake for a pedestrian in the roadwayamounted to negligence which caused or contributed to the cause of Mr. Cowen's death, see Van Hubbard v. State, 23 Fla. L. Weekly D2247, ___ So.2d ___, 1998 WL 658264 (Fla. 1st DCA Sept.28, 1998), review granted, 727 So.2d 911 (Fla.1999); Parker v. State, 590 So.2d 1027, 1028 (Fla. 1st DCA 1991), and that Mr. Ackerman knew, or should have known, that an accident entailing injuries had occurred. See generally State v. Dumas, 700 So.2d 1223, 1225 (Fla. 1997); State v. Mancuso, 652 So.2d 370 (Fla.1995).
Given Mr. Ackerman's blood alcohol level of .16 percent two and a half hours after the accident, the record also contains evidence from which the jury could conclude that his blood alcohol level at the time of the accident exceeded .08 percent and that he was then under the influence of alcohol to the extent that his normal faculties were impaired within the meaning of the statute. See § 316.1934(2)(c), Fla. Stat. (1997); State v. Rolle, 560 So.2d 1154, 1156-57 (Fla.1990). This is so even if the jury credited Mr. Ackerman's testimony that he drank scotch after the accident.
The jury was entitled to conclude that he underestimated his consumption of alcoholic beverages earlier in the evening.

III.
The amended information charged Mr. Ackerman with DUI Manslaughter-Leaving the Scene, DUI Manslaughter, and Leaving the Scene of an Accident Involving Death. On his motion, however, the DUI Manslaughter and Leaving the Scene of an Accident Involving Death counts were stricken on grounds they charged lesser included offenses of DUI Manslaughter-Leaving the Scene.
While all the elements of DUI Manslaughter and Leaving the Scene of an Accident Involving Death are indeed subsumed within DUI Manslaughter-Leaving the Scene, see § 775.021(4)(b)3., Fla. Stat. (1997); Duhart v. State, 724 So.2d 1223, 1224-25 (Fla. 1st DCA 1998), so that a verdict against Mr. Ackerman on all three counts could not have supported three separate convictions, see Pruett v. State, 24 Fla. L. Weekly D1013, D1013, 731 So.2d 113, 113 (Fla. 1st DCA 1999); Austin v. State, 699 So.2d 314, 315 (Fla. 1st DCA 1997) (en banc); Vitagliano v. State, 680 So.2d 500, 501-02 (Fla. 1st DCA 1996), striking the DUI Manslaughter and Leaving the Scene of an Accident Involving Death counts led to jury instructions about which Mr. Ackerman now complains.
The jury found Mr. Ackerman guilty of "Leaving The Scene of DUI Manslaughter" instead of any of five lesser included offenses listed on the verdict form: "Leaving the Scene of an Accident Involving Death," "Leaving the Scene of an Accident Involving Bodily Injury," "Leaving the Scene of an Accident Involving damage to property," "DUI Manslaughter," and "DUI." On appeal, he argues that the trial court improperly instructed the jury that it could find him guilty of no more than one lesser included offense.
We decline to reach the merits of this issue because defense counsel did not preserve it by contemporaneous objection. During the hearing on the motion for new *1148 trial, defense counsel conceded that he had not timely objected to the "choose-only-one aspect" of the jury instructions.

IV.
The trial court found that no juror consulted a Bible that was in the jury room during deliberations, and that there was no reasonable possibility that the Bible's simply being there affected the verdict. Cf. Yanes v. State, 418 So.2d 1247, 1248 (Fla. 4th DCA 1982). All but one of the jurors testified that nobody read the Bible during deliberations. The other juror testified that a juror read a Bible during the trial at some point but could not remember whether the reading had taken place during the jury's deliberations. The appellant has demonstrated no error in the trial court's findings or in its denial of appellant's motion for new trial.
It is clear under State v. Hamilton, 574 So.2d 124 (Fla.1991), that the mere presence of a Bible in the jury room during deliberations does not require reversal. Cf. Keen v. State, 639 So.2d 597, 599 (Fla. 1994) (reversing because magazine article outlining distasteful tactics of criminal defense attorneys was present in the jury room during deliberations).
Florida courts are in general agreement that the doctrine applied in Smith [v. State, 95 So.2d 525 (Fla.1957),] is not a per se rule of reversal whenever any unauthorized materials are present in the jury room. Rather, our courts have applied a harmless error analysis that requires close scrutiny of the type of unauthorized material at issue, its relation to the issues at trial, and the extent to which jurors actually consulted the material.
Hamilton, 574 So.2d at 126-27 (citations omitted). Nothing in the record indicates that jurors were in any way distracted by the presence of the Bible. See Hamilton, 574 So.2d at 130-31 ("The state can meet its burden simply by establishing that jurors were not overly distracted by the magazines, since it is not reasonable to assume that jurors derived any prejudicial legal or factual conclusions from automobile magazines.").
Mr. Ackerman complains that the trial court limited the initialand, as events unfolded, the entirescope of the inquiry to the question whether anybody had opened, consulted, or read from the Bible. But this ruling was fully consistent with the dictates of Hamilton. See Hamilton, 574 So.2d at 129 (citing United States v. Howard, 506 F.2d 865, 869 (5th Cir.1975)). Once the trial judge determined that the Bible had not even been opened, she correctly declined to allow Mr. Ackerman to ask jurors whether they had prayed or made biblical references during deliberations.
Without some predicate, inquiry into such matters would have afforded an unwarranted opportunity to impeach the verdict and might have constituted a gratuitous intrusion into the thought processes of individual jurors. "A jury verdict is sacrosanct unless clerical mistakes or outside influences thwart return of the jury's intended verdict." Brown v. State, 661 So.2d 309, 311 (Fla. 1st DCA 1995) (quoting Robinson v. MacKenzie, 508 So.2d 1285, 1286 (Fla. 3d DCA 1987)).

V.
Finally, Mr. Ackerman contends that the trial court erred in assessing 120 points for "victim injury" (Mr. Cowen's death) in addition to 92 points for a level nine felony, "DUI manslaughter; failing to render aid or give information." § 921.0012(3), Fla. Stat. (1997). We conclude, however, that the statutory scheme requires scoring sentencing points on account of the victim's death, even though the death of the victim is an element of DUI Manslaughter-Leaving the Scene, proscribed by section 316.193(3)(c)3 b, Fla. Stat. (1997). See §§ 921.0012(3), 921.0014(1)(a), Fla. Stat. (1997). In this regard, we are in accord with our sister courts who have spoken to the question. See Wendt v. State, 711 So.2d 1166, 1167 (Fla. 2d DCA 1998) (en banc); Martinez v. State, 692 So.2d 199, 202-03 (Fla. 3d DCA 1997).
*1149 In appellant's view, a person convicted of a felony for driving under the influence would receive 156 points if that driving had resulted in somebody's death (36 points for the offense and 120 points for "victim injury"), while a person convicted of DUI Manslaughter would only receive 84 points (84 points for the offense and none for "victim injury"). We do not believe the Legislature intended such an anomalous result.
Mr. Ackerman also argues by analogy to the rule that points cannot be scored for possession of a firearm where such possession is an element of the offense. See, e.g., Schmiel v. State, 727 So.2d 257 (Fla.1999). But this rule arises from statutory language that does not pertain here. Section 921.0014(1)(b), Florida Statutes (1997), authorizes additional points when a defendant commits a felony, not by virtue of, but simply "while having in his or her possession[ ] a firearm." (Emphasis added.) Our supreme court has applied the rule of lenity and drawn the inference that this statutory language does not contemplate adding points for possession of a firearm where such possession is an element of the offense. See White v. State, 714 So.2d 440 (Fla.1998).
On the other hand, "[v]ictim injury shall be scored for each victim physically injured and for each offense resulting in physical injury whether there are one or more victims." Fla. R. Crim. P. 3.702(d)(5) (emphasis added). "`Victim injury' means the physical injury or death suffered by a person as a direct result of the primary offense, or any additional offense, for which an offender is convicted and which is pending before the court for sentencing at the time of the primary offense." § 921.0011(7)(a), Fla. Stat. (1997).
Affirmed.
ERVIN and BOOTH, JJ., CONCUR.