869 So.2d 45 (2004)
Gene Robert SIMS, Appellant,
v.
STATE of Florida, Appellee.
Nos. 5D02-2401, 5D02-2448.
District Court of Appeal of Florida, Fifth District.
March 5, 2004.
Rehearing Denied April 7, 2004.
Thomas E. Cushman, St. Augustine, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Wesley Heidt, Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
This appeal brought by Gene Robert Sims raises an issue concerning the assessment of victim injury points for the crime of leaving the scene of an accident involving *46 death. We conclude that victim injury points were properly assessed and affirm.
Mr. Sims was driving his wife's truck when he struck and killed Bernell Williams (the "Victim"). For reasons not specified Mr. Sims left the scene of the accident without ever stopping the truck. He was charged with violating section 316.027(1)(b), Florida Statutes (2001), and found guilty as charged in the information.
Sheila Asbury, one of the passengers in the Sims vehicle, testified that the occupants of the truck were looking for drugs, having already smoked crack cocaine and drunk beer prior to the accident. She stated that before Mr. Sims hit the Victim, she saw the Victim laying on top of a bicycle in the middle of the road. She described the sounds made by the accident as a "loud dragging like metal ... it was dragging bad." Because the Victim was laying in the middle of the road, Mr. Sims had only two choices. He could either hit the Victim or hit the guardrail on the side of the road. In any event, the trial court eventually determined that the accident was virtually unavoidable.
The medical examiner testified at trial that at the time of his death the Victim had a blood alcohol level of .196, and that he had been struck while he was lying in the street. He theorized that the Victim had fallen off of his bicycle and was lying in the middle of the road when he was struck. The medical examiner further testified that the victim's death was "instantaneous" upon impact, or certainly "within a second or two." The autopsy revealed that the Victim had lacerations of the head, neck, and face; bruises and abrasions on the lower chest; skin rubbed off from large areas of his arms and from his lower back to the top of his shoulders; a torn scalp; crushing injuries to his entire chest and to the right side of his abdomen; a broken right pelvis; every rib fractured on both sides of his torso; a crushed and torn liver; a crushed and torn heart; extensive lung injuries; a broken back and neck; and a crushed skull with extensive injuries to the brain. The doctor concluded that the Victim's injuries were consistent with his being hit, dragged, and run over.
A law enforcement homicide investigator who responded to the scene indicated that he saw the Victim on the side of the road, where he had been placed by two passers-by. When asked what he was able to determine from an examination of the accident scene, he said "Basically all I could say for sure is that the gentleman had been hit by some type of vehicle and drug down the road for a bit and was dead."
Prior to sentencing a pre-sentence investigation was prepared which reflected a minimum sentence of 8 months incarceration. At the sentencing hearing, however, the State argued in favor of adding 120 victim injury points to Mr. Sims' Criminal Punishment Code scoresheet. The trial judge agreed, and but for a downward departure, the result was a lowest permissible incarcerative sentence of eight years. Because the trial judge found, among other things, that the accident was "nearly unavoidable," he downwardly departed, and sentenced Mr. Sims to five years in the custody of the Department of Corrections, followed by five years of probation.
Mr. Sims contends that the trial court improperly assessed "victim injury points" to his scoresheet, thus resulting in a minimum sentence longer than called for under the guidelines. He argues that he was charged only with the offense of leaving the scene of a crash involving a death. He was not charged with a crime specifically concerning the injury inflicted on the Victim because the Victim's actions made the crash nearly unavoidable. Essentially, Mr. Sims contends that because the offense *47 he committed occurred after the victim was already dead, the injuries and death were not the "direct result" of leaving the scene of the accident.
We begin our analysis by noting that the imposition of victim injury points is within the sound discretion of the trial court. See Jones v. State, 826 So.2d 1100 (Fla. 5th DCA 2002); Ely v. State, 719 So.2d 11 (Fla. 2d DCA 1998). A trial court abuses its discretion "only where no reasonable man would take the view adopted by the trial court." See Nolte v. State, 726 So.2d 307, 309 (Fla. 2d DCA 1998). We believe that the imposition of victim injury points in this case was within the trial court's discretion, and that no abuse has been shown.
Section 921.0021(7)(a) defines victim injury as:
The physical injury or death suffered by a person as a direct result of the primary offense, or any additional offense, for which an offender is convicted and which is pending before the court for sentencing at the time of the primary offense.
The Florida Rules of Criminal Procedure also give guidance on how to assess victim injury points. Rule 3.701(d)(7), Florida Rules of Criminal Procedure, provides that:
Victim injury shall be scored for each victim physically injured during a criminal episode or transaction, and for each count resulting in such injury whether there are one or more victims.
The committee's comments following the rule reflect the intention of the committee that points for victim injury be added for each victim injured during a criminal transaction or episode. The injury need not be an element of the crime for which the defendant is convicted, but is limited to physical injury. When the rule was adopted, the Supreme Court reiterated that:
The commission recommends that victim injury be scored whether or not it is an element of the crime, if, in fact, injury occurred during the offense which led to the conviction. We see merit in scoring physical injury if a defendant physically injures the victim of the offense during the course of a criminal episode, regardless of whether the injury is an element of the crime, but do not believe it wise to extend the definition of injury to include psychic injury.
Florida Rules of Criminal Procedure re Sentencing Guidelines (rules 3.701 and 3.988), 509 So.2d 1088, 1089 (Fla.1987). Thus, it is clear that the current rule allows for the assessment of victim injury points even if the injury is not an element of the crime, as long as there is physical trauma.
The Fourth District Court of Appeal has considered a factually similar case. In May v. State, 747 So.2d 459 (Fla. 4th DCA 1999), the defendant appealed his sentence arguing that the trial court erred when it assessed victim injury points for the death of the victim. The defendant struck and hit the victim. While trying to dislodge the body, the defendant swerved from side to side and dragged the body approximately 500 feet, throwing the body into the middle of the street where it was struck by another car. The defendant pled no contest to the charges of leaving the scene of an accident involving death in violation of section 316.027(1)(b). At sentencing the state introduced the deposition of the medical examiner to establish a nexus between the defendant's actions and the victim's death. The medical examiner testified that as a result of being dragged under the defendant's vehicle, the victim sustained multiple blunt trauma injuries and large brush abrasions which eroded skin and *48 muscle, exposing the victim's internal organs. The medical examiner opined that the combination of all of the injuries caused the victim's death, but could not say for sure whether the victim's death was a direct result of the first collision, being dragged under defendant's vehicle in the course of defendant's leaving the scene, or the second impact. The testimony was that both the impact and the dragging caused the death. The Fourth District Court determined that the trial court had sufficient evidence to support its finding that the commission of the crime in issue ... resulted in "death suffered by a person as a direct result of the primary offense," and affirmed the lower court, stating that section 921.0011(7)(a) requires that the crime be a cause of death, not necessarily the cause of death.
In the present case there is substantial competent evidence that the Victim was dragged after being hit by Mr. Sims' vehicle. Using the reasoning set forth in May, we conclude that there was a sufficient causal connection between the leaving of the accident scene and the death to justify the imposition of victim injury points, and that the trial judge did not abuse his discretion in doing so.
Mr. Sims has brought to our attention two cases from the Second District Court of Appeal that he believes stand for the proposition that victim injury points should not be assessed for the crime of which he was convicted. An examination of these cases, Rodriguez v. State, 684 So.2d 864 (Fla. 2d DCA 1996), and Geary v. State, 675 So.2d 625 (Fla. 2d DCA), review denied, 680 So.2d 422 (Fla.1996), however, reflects that our sister court concluded that in those cases there was no causal connection between the crimes and the victim injury. In the present case, however, as we have indicated, there is a nexus between the death of the Victim and the crime. Cf., Schuette v. State, 822 So.2d 1275 (Fla.2002); Triplett v. State, 709 So.2d 107 (Fla. 5th DCA 1998).
Mr Sims also relies on two cases, Motyka v. State, 457 So.2d 1114 (Fla. 1st DCA 1984), and Benedict v. State, 475 So.2d 1000 (Fla. 5th DCA 1985), for the proposition that Rule 3.701(d)(7) only permits victim injury points to be scored if victim injury is an element of one of the offenses for which a criminal defendant is convicted. Since victim injury is not an element of leaving the scene of a crash involving death, he argues that victim injury points were inappropriate. This theory, however, fails to recognize that Rule 3.701(d)(7) was amended in 1988, after the publication of those cases to remove the requirement that victim injury be an element of the offense. In fact, the commission notes to the amendment specifically relate that the injury need not be an element of the crime. See also Seccia v. State, 786 So.2d 12, 14 (Fla. 1st DCA 2001).
An issue arose at the oral argument of this case concerning whether victim injury points are already factored into the offense level for the offense of which he was convicted. Mr. Sims points out that section 316.027(1)(a), Florida Statutes, makes the offense of leaving the scene of a crash resulting in injury a third degree felony, while subsection (1)(b) of that statute makes leaving the scene of a crash involving death a second degree felony. Thus, he theorizes that victim injury has already been mixed into this sentencing calculus. His theory, however, misapprehends the purpose of victim injury points.
Victim injury points are added to a scoresheet to ratchet up the sentencing minimums within a felony level. That is to say, for example, that not all second degree felonies are deemed to require the same punishment, even though they share the same maximum punishments. By adding *49 victim injury points, a higher quantity of incarceration can be expected, because the lowest permissible sentence is elevated. Dealing in stolen property, a second degree felony, may justify a less severe punishment than leaving the scene of a crash involving death. To assure that the seriousness of the latter crime is recognized, the legislature has required that victim injury points be added if the death is the direct result of the offense. See § 921.0021(7)(a), Fla. Stat. (2001). Similarly, if a criminal defendant is convicted of second degree murder in violation of section 782.04(2) or (3), Florida Statutes (2001), a felony of the first degree, 240 victim injury points are added to the Criminal Punishment Code worksheet, even though the death of the victim is by definition factored into the offense level. See § 921.0024, Fla. Stat. (2001). In contrast, insurance fraud where the property value is $100,000 or more is also a first degree felony, but no victim injury points are imposed. See § 817.234(11)(c), Fla. Stat. (2001). The net effect, of course, is that the lowest permissible sentence will be higher for second degree murder, even though both are first degree felonies. Finally, we note that the appellate courts of this state have frequently acknowledged the propriety of the imposition of victim injury points in cases where the injury is an element of the crime. See, e.g., Whipple v. State, 789 So.2d 1132, 1138 (Fla. 4th DCA 2001); Trombley v. State, 754 So.2d 121 (Fla. 5th DCA 2000); Scholz v. State, 734 So.2d 526 (Fla. 4th DCA 1999); Wendt v. State, 711 So.2d 1166 (Fla. 2d DCA 1998); Martinez v. State, 692 So.2d 199 (Fla. 3d DCA), review dismissed, 697 So.2d 1217 (Fla.1997).
Finally, we do not disagree with the general legal theory articulated in the dissenting opinion. Our disagreement stems only from a view of the evidence that was before the trial court. We are satisfied that the testimony from the medical examiner and from the homicide investigator to the effect that the Victim was hit, dragged and run over provides, as in May, a sufficient nexus between the failure to stop and the victim injury.
Based on this analysis, we conclude that the trial court properly assessed victim injury points in connection with the sentencing of Mr. Sims.
AFFIRMED.
SMITH, M. T., Associate Judge, concurs.
SHARP, W., J., dissents with opinion.
SHARP, W., J., dissenting.
I respectfully disagree that the 120 victim injury points were properly added to Sims' guidelines scoresheet in this case. While assessment of injury points is a matter addressed to the sentencing judge's discretion, the wording of the guidelines and applicable rules control when victim injury points should or should not be assessed. Martinez v. State, 692 So.2d 199 (Fla. 3d DCA 1997).
Sims was driving a semi-tractor trailer, late at night, in an unlighted rural area. He was not exceeding the speed limit. He was in his own lane. He was not impaired, according to the testimony of a passenger. There was no contrary testimony. As the Sims' vehicle approached the end of a bridge, suddenly the victim appeared before them in the middle of the road. The victim had apparently fallen on top of his bicycle and was not standing up. Sims testified he could not stop his vehicle in time to avoid hitting the victim and because of the guardrails on either side of the road, he could not swerve to avoid him.
Sims realized he had run over the victim. He made a decision not to stop and continued, leaving the scene of the accident. *50 Later, apparently the victim's body was moved to the side of the highway by unknown persons. There were no post-mortem injuries evident to indicate he had been hit by another vehicle. The death-causing injuries were consistent with being hit and then run over.
The trial judge concluded that the accident which caused the death of the victim was "nearly unavoidable." Sims was not charged with vehicular manslaughter or DUI/manslaughter. Rather, he was only tried and convicted of leaving the scene of an accident resulting in the death of a person. Section 316.027(1)(b) provides:
The driver of any vehicle involved in a crash resulting in the death of any person must immediately stop the vehicle at the scene of the crash, or as close thereto as possible, and must remain at the scene of the crash until he or she has fulfilled the requirements of s. 316.062.
Section 316.062 mandates that the driver must give information about the accident to authorities and render such aid as appropriate and needed to the victim.
At the time of the accident (May 13, 2001), the applicable statute, section 921.0021(7)(a) (2001) defined "victim injury" as:
[T]he physical injury or death suffered by a person as a direct result of the primary offense, ... which is pending before the court for sentencing at the time of the primary offense. (emphasis supplied)
And, Florida Rule of Criminal Procedure 3.704(d)(9) (2001), which implemented the 1998 Criminal Punishment Code,[1] provides:
Victim injury is scored for physical injury or death suffered by a person as a direct result of any offense pending before the court for sentencing. ... Victim injury must be scored for each victim physically injured and for each offense resulting in physical injury whether there are one or more victims. However, victim injury must not be scored for an offense for which the offender has not been convicted. (emphasis supplied)
In my view, both of the applicable provisions mandate that there be a cause and effect relationship between the crime for which a defendant is being sentenced (here leaving the scene of an accident causing a death) and the injuries or death for which points are being assessed. That is totally lacking in this case. The victim died on impact. Sims' failure to stop and render assistance or report to the authorities the facts and circumstances of the accident had no nexus or connection with the death under the facts of this case. Even had Sims stopped and tried to render assistance, and reported to the police all he knew about the accident, the victim died instantly. His unlawful departure from the scene had no connection with the death.
Both the state and the defense rely on May v. State, 747 So.2d 459 (Fla. 4th DCA 1999) to support their positions. That case appears to be factually distinguishable from this one because the victim in that case was hit by the defendant's vehicle and dragged 500 feet, after the defendant knew he had hit the victim, had determined not to stop and had begun to leave the scene, dragging the victim's body. Further, the *51 medical examiner testified that he could not tell whether the defendant's act of hitting or dragging the victim caused his death or whether it was the impact of a second car that later struck the victim in the road. He said both the impact and the dragging while the defendant attempted to flee, caused the death. Based on that testimony, the court determined that the evidence supported the trial court's conclusion that the death was a direct result of the primary offense (leaving the scene of an accident).
However, as noted above, there is no such testimony in this case. Sims' fleeing or leaving the scene of the accident did not cause or contribute to the victim's death because the victim died instantly upon impact and before Sims could possibly have stopped his vehicle.
The second DCA has issued two opinions indicating, as suggested above, that there must be a nexus between the crime for which the defendant is convicted, and the victim injury or death points assessed. In Geary v. State, 675 So.2d 625 (Fla. 2d DCA 1996), the court relied on the wording in section 927.001(7)(a) (quoted above) and rule 3.702(d)(5) (discussed above), which both require that the injury or death be a direct result of the offense pending for sentencing in order to assess injury points. The court concluded in that case, that because the defendant's leaving the scene of an accident did not cause the injury, injury points would not be assessed. It reasoned that had the defendant stayed at the scene, the injury would have occurred in any event. Although the court did not state the facts in the case, it similarly concluded in Rodriguez v. State, 684 So.2d 864 (Fla. 2d DCA 1996) that in order to assess injury points against a defendant for leaving the scene of an accident resulting in death, there must be evidence that death was caused by, or was a direct result of, the defendant's leaving the scene of the accident.
The error in this case, I think, was caused by the trial court's view of this case as "the flip side of a DUI/manslaughter." The judge commented that Sims left the scene of the accident to avoid being charged with manslaughter because he had been smoking cocaine and had consumed an alcoholic beverage, and he was "impaired." The difficulty with this approach is that Sims was not charged with nor convicted of manslaughter or DUI, and there was no evidence in this record that Sims was impaired.
Had Sims been charged with and convicted of manslaughter or DUI in connection with this accident, clearly the imposition of points for the victim's death would be appropriate. See Martinez v. State, 692 So.2d 199 (Fla. 3d DCA 1997). But the rule and statute both require that the death or injury must be a direct result of the "primary offense," to authorize assessment of victim injury points. Absent a conviction for manslaughter or DUI causing a death or injury as the primary offense, as in this case, both the rule and statute require a causal or result connection with the death and the leaving the scene of the accident offense.
This case is in the same posture as if Sims had been charged and tried for manslaughter or DUI, but the jury acquitted him of that charge because the accident was unavoidable and not his fault, yet it convicted him of leaving the scene. Rule 3.704(d)(9) mandates that no victim injury points should be assessed for a crime for which a defendant has not been convicted.
In sum, had the state presented evidence that Sims' leaving the scene of the accident, the only crime for which he was convicted, caused in part or in full the death of the victim, then I would agree with assessing victim injury points in this *52 case. Situations can be imagined where victim injury points should be assessed. For example, a driver who hits and knocks a person from a bicycle, leaving the person in the road, injured, who is later run over by another car and killed. The problem with the precedent of assessing victim injury points in this case is that it is difficult to image any case in the future where victim injury points will not be assessed where a person is run over and killed by a vehicle in an accident, and the errant driver flees the scene. In my view, that is contrary to the wording of the statute and rules which require a "direct result" relationship.
NOTES
[1] The various versions of the Criminal Rules applicable to different guidelines (rules 3.701 and 3.702) word this provision slightly differently. Rule 3.701(d)(8) which is quoted in the majority opinion provides "victim injury shall be scored for each victim physically injured during a criminal episode or transaction," but it addressed the guidelines prior to 1994. Rule 3.702(d)(5) reads substantially the same as the rule quoted above, and it applies to the 1994 Sentencing Guidelines.