388 So.2d 561 (1980)
STATE of Florida, Appellant,
v.
Harry S. HAMILTON, Appellee.
No. 55181.
Supreme Court of Florida.
September 18, 1980.
*562 Jim Smith, Atty. Gen., and Martin S. Friedman, Asst. Atty. Gen., and Sheri W. Smallwood, Asst. Gen. Counsel, Dept. of Environmental Regulation, Tallahassee, for appellant.
Michael L. Bryant of Birr, Bryant & Saier, Gainesville, for appellee.
ADKINS, Justice.
This is an appeal from an order of the Alachua County Court which held section 403.161(1)(a), Florida Statutes (1977) unconstitutional. We have jurisdiction pursuant to article V, section (3)(b)(1), Florida Constitution.
The appellee, hereinafter defendant, was charged with violating Florida's Air and Water Pollution Control Act:
It shall be a violation of this Chapter, and it shall be prohibited: (a) To cause pollution, except as otherwise provided in this Chapter, so as to harm or injure human health or welfare, animal, plant, or aquatic life or property.
§ 403.161(1)(a), Fla. Stat. (1977). Pollution is defined as:
[T]he presence in the outdoor atmosphere or waters of the state of any substances, contaminants, noise, or manmade or man-induced alteration of the chemical, physical, biological, or radiological integrity of air or water in quantities or at levels which are or may be potentially harmful or injurious to human health or welfare, animal or plant life, or property, or unreasonably interfere with the enjoyment of life or property, including outdoor recreation.
§ 403.031(2) Fla. Stat. (1977).
The state alleged that during construction of a shopping center defendant's agent or employee caused a retention basin to be placed within a known creosote deposit on the property. Water from the pond absorbed toxic pollutants from the creosote, including crystalline or liquid isometric phenos or phenolic-type compounds. A pump and pipe discharged the contaminated water from the pond into a ditch, which eventually led to Haile Sink, a source of drinking water for the city of Gainesville. The trial court granted defendant's motion to dismiss the charges on the ground that the statute was unconstitutionally vague in that it failed to give adequate notice of the proscribed conduct.
The accepted test for vagueness is whether the statute is specific and clear enough to put persons of common intelligence and understanding on notice of the proscribed conduct. Sandstrom v. Leader, 370 So.2d 3 (Fla. 1979); Brown v. State, 358 So.2d 16 (Fla. 1978). However, a defendant whose conduct clearly falls within the statutory prohibition may not complain of the absence of notice. Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1974). The state argues the latter principle precludes defendant's notice challenge. The statute expressly prohibits contaminating state waters with any substance which is injurious to human health or animal, plant or aquatic life. Creosote is allegedly a known toxin which is deleterious to health and fatal if ingested. The record in this case does not support the state's proposition. Looking to the definition of creosote, one finds:
[A] colorless or yellowish oily liquid that has a burning smokey taste, contains a mixture of phenolic compounds . ., is obtained by the distillation of wood tar, ... and is used chiefly as an expectorant in chronic bronchitis and as a collector and frother in ore flotation.
Webster's Third New International Dictionary, 534 (1976). Contrary to the state's assertion, it is not clear that pumping water from a creosote-lined basin into a city's water system constitutes pollution in violation of the statute. Cf. Stock v. State, 526 P.2d 3 (Alaska 1974) (dumping of raw sewage into streams running through residential areas clearly within the definition of pollution). We therefore examine the statute for clarity in light of the constitutional requirements.
*563 Our examination must be tempered by the awareness that we deal with environmental protection legislation. § 403.021, Fla. Stat. (1977). "A statute enacted for the public benefit should be construed liberally in favor of the public even though it contains a penal provision." City of Miami Beach v. Berns, 245 So.2d 38, 40 (Fla. 1971). There is no doubt that the Pollution Control Act was intended to operate in the public interest. § 403.021, Fla. Stat. (1977). The scope of the topic extends to lands, sea and air. Even when limited to state waters, pollution legislation must be geared toward a multi-faceted and complex set of circumstances. See Annot., 32 A.L.R.3d 215 (1970). The problems and their solutions are the subject of a highly technical interdisciplinary science. We agree with other jurisdictions which have found that the nature of pollution control inhibits detailed descriptions of proscribed standards of conduct. Texas Pet Foods, Inc. v. State, 529 S.W.2d 820 (Tex.Civ.App. 1975); Southern Illinois Asphalt Co. v. Environmental Protection Agency, 15 Ill. App.3d 66, 303 N.E.2d 606 (5th App.Dist.Ct. 1973).
The statute under which defendant was charged makes it a crime to cause pollution "so as to harm or injure human health or welfare, animal, plant or aquatic life or property." § 403.161(1)(a), Fla. Stat. (1977). Thus, criminal penalties are imposed only if the pollution causes actual harm. The legislature is free to define offenses by describing them in terms of their results. State v. Barone, 124 So.2d 490 (Fla. 1960). The defendant is not charged with criminal liability for acts which create only a potential for injury. Cf. Stock v. State, 526 P.2d at 10 (defendant charged with violation of section of statute prohibiting alterations to water which were "potentially" as opposed to "actually" harmful.) Although the definition of pollution includes the phrase "may be potentially harmful", those types of pollution would not subject the actor to criminal liability. The definition of pollution is couched in commonly-used words which convey adequate warning of the proscribed conduct when read in conjunction with the section creating the offense. The legislature cannot be expected to list every possible substance which causes harm when present in sufficient quantities. This would be an impossible standard to meet and is not mandated by our constitution. State v. Dye, 346 So.2d 538 (Fla. 1977); Orlando Sports Stadium, Inc., v. State, 262 So.2d 881 (Fla. 1972).
The state looks to various administrative regulations pertaining to water pollution control as enhancing the definitional precision of the statute. See Fla. Admin. Code Rule 17-3.02. The trial court ruled that these standards for minimum conditions of waters did not add sufficient specificity to save the statute. In light of our holding that the statute is sufficient in and of itself to withstand the vagueness challenge, we need not address the details of the regulatory language.
The information in this case charged defendant with violating section 403.161(1)(a), Florida Statutes (1977). The violation must be done "willfully or negligently" to give rise to a criminal penalty. § 403.161(3), Fla. Stat. (1977). The defendant contends this is unconstitutional because it purports to penalize simple negligence which cannot support a criminal conviction. State v. Winters, 346 So.2d 991 (Fla. 1977). In Winters a statute which penalized the "negligent treatment of children" was invalidated as being unconstitutionally vague and overbroad. See § 827.05, Fla. Stat. (1975). There the constitutional flaw was that the prohibition extended to unintentional conduct which was not generated by culpable negligence. This Court distinguished a similar statue which proscribed acts done "willfully or by culpable negligence". See § 827.04(2), Fla. Stat. (1975) (E.S.). The latter statute was subsequently upheld against a vagueness challenge on the very basis that it did not criminalize simple negligence. State v. Joyce, 361 So.2d 406 (Fla. 1978). The state urges us to construe the instant statute as proscribing willful or culpably negligent conduct. This we cannot do. Even where *564 legislation is specifically enacted in the public interest there must be clearly ascertainable standards of guilt by which a citizen may gauge his conduct. Section 403.161(3), Florida Statutes (1977), purports to impose criminal liability upon acts or omissions done entirely without intent. This is too broad a condemnation in this instance and must fail. The balance of the statute is complete in itself and constitutionally valid. We therefore delete only the unconstitutional portion, i.e. that which penalizes mere negligent conduct, and uphold the remainder. State v. Williams, 343 So.2d 35 (Fla. 1977).
The order of the trial court is reversed and the cause remanded for proceedings consistent with this opinion.
It is so ordered.
BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, C.J., and ENGLAND, J., concur in result only.