638 So.2d 509 (1994)
STATE of Florida, Appellant,
v.
Robert N. SMITH, Appellee.
No. 82482.
Supreme Court of Florida.
June 9, 1994.
Robert A. Butterworth, Atty. Gen., and Katherine V. Blanco and Stephen A. Baker, Asst. Attys. Gen., Tampa, for appellant.
James Marion Moorman, Public Defender and Robert D. Rosen, Asst. Public Defender, Bartow, for appellee.
OVERTON, Justice.
We have on appeal State v. Smith, 624 So.2d 355 (Fla.2d DCA 1993), in which the district court declared section 322.34(3), Florida Statutes (1991), to be unconstitutional because it found that an act of simple negligence in operating a motor vehicle could not be combined with the crime of driving a motor vehicle under a canceled, suspended, or revoked license to create a new criminal offense. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we find the statute to be constitutional and reverse the decision of the district court.
In this case, the appellee, Robert N. Smith, was charged with driving with a suspended license causing death or injury under section 322.34(3),[1] which provides:
Any person whose driver's license has been canceled, suspended, or revoked pursuant to s. 316.655, s. 322.26(8), s. 322.27(2), or s. 322.28(2) or (5) and who operates a motor vehicle while his driver's license is canceled, suspended, or revoked and who by careless or negligent operation thereof causes the death of or serious bodily injury to another human being, is guilty of a felony of the third degree, punishable as provided in s. 775.082 or s. 775.083.
Smith moved to dismiss the charge on the basis that section 322.34(3) unconstitutionally criminalizes mere negligence. The trial *510 court granted the motion to dismiss and the State appealed.
On appeal, the Second District Court of Appeal affirmed. The district court noted that driving with a suspended or revoked license is normally a misdemeanor. Under the statute at issue, however, the district court determined that simple negligence is used to enhance the crime of driving with a suspended or revoked license to a felony. In reviewing whether the statute was constitutional, the district court first determined that simple negligence, standing by itself, cannot constitute a criminal act. The district court then looked to the question of whether the non-criminal act of simple negligence could be combined with the criminal act of driving with a canceled, suspended, or revoked license to create a new and distinct criminal offense. Finding no causal connection between the criminal and non-criminal acts, the district court held that simple negligence could not be used to enhance a criminal act from a misdemeanor to a felony.
As the district court correctly noted, on several occasions this Court has found statutes criminalizing simple negligence to be unconstitutional. See, e.g., State v. Hamilton, 388 So.2d 561 (Fla. 1980); State v. Winters, 346 So.2d 991 (Fla. 1977). This does not mean, however, that simple negligence can never be used to enhance the penalty for a willful criminal act. For example, under section 316.193, Florida Statutes (1993), the act of driving under the influence (DUI), when combined with an act of simple negligence, is elevated to the crime of DUI manslaughter. See Magaw v. State, 537 So.2d 564 (Fla. 1989). The district court distinguished the DUI manslaughter statute by stating that driving under the influence is, in and of itself, a reckless act, whereas driving with a suspended, canceled, or revoked drivers license is not. We disagree.
Only when a driver's license has been suspended, canceled, or revoked due to some wrongdoing on the part of the driver can a person be charged under section 322.34(3). For instance, only persons who have had their driver's licenses suspended, canceled, or revoked pursuant to sections 316.655 (suspension due to conviction of traffic offenses), 322.26(8) (suspension by a court due to conviction of serious traffic offense), 322.27(2) (suspension by the Department of Highway Safety and Motor Vehicles due to conviction of serious traffic offense), 322.28(2) (suspension for driving under the influence), or 322.28(5) (suspension due to conviction of manslaughter or vehicular homicide), are subject to prosecution under the statute at issue. Consequently, when a person is charged under the statute, a determination already has been made that the person is no longer fit to be driving on Florida's highways. As such, knowingly driving with a suspended, canceled, or revoked driver's license, as defined under the statute at issue, is indeed a willful act in clear violation of the law.
We also disagree with the district court's conclusion that the statute is unconstitutional because "[n]o causal connection exists between driving with a cancelled, suspended or revoked license and an accident involving death or serious injury." 624 So.2d at 358. As we stated in Magaw:
[Under the DUI manslaughter statute,] the state is not required to prove that the operator's drinking caused the accident. The statute requires only that the operation of the vehicle ... caused the accident. Therefore, any deviation or lack of care on the part of a driver under the influence to which the ... accident can be attributed will suffice.
537 So.2d at 567 (emphasis added). Under either the DUI manslaughter statute or the statute at issue, it is not the simple negligence of the driver that is the criminal conduct being punished; it is the willful act of choosing to drive a vehicle under the influence or to drive a vehicle with a suspended, canceled, or revoked license that is the criminal conduct being punished. In both instances, the legislature has simply made a policy decision that anyone who engages in the prohibited criminal conduct and who, while engaging in that prohibited criminal conduct, negligently injures another, is guilty of a more severe crime than if the prohibited conduct had not resulted in injury to another. Similarly, one who negligently kills another while engaged in the commission of certain enumerated felonies is guilty of felony murder. *511 See § 782.04(1)(a)(2), Fla. Stat. (1993). Although the homicide may have been unintentionally committed through negligence, it is the willful act of committing the underlying felony that criminalizes the simple negligence supporting the conviction for felony murder. Consistent with that rationale, we hold that section 322.34(3) does not unconstitutionally criminalize simple negligence.
Accordingly, we find section 322.34(3), Florida Statutes (1991), to be constitutional, reverse the decision of the district court, and remand this cause for further proceedings.
It is so ordered.
GRIMES, C.J., HARDING, J., and McDONALD, Senior Justice, concur.
KOGAN, J., concurs in result only with an opinion, in which SHAW, J., concurs.
KOGAN, Justice, concurring in result only.
Criminalizing a negligent act poses serious questions of constitutional law and public policy that deserve very careful consideration. The United States Supreme Court has detailed many of these questions in Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1951), where Mr. Justice Jackson outlined the history of American criminal law's development from its English antecedents. As Morissette notes, there has been a slow drift away from the early English requirement that every crime must arise from a "vicious will"[2] or else there is no crime at all.
Today, some crimes can exist in the complete absence of even the slightest degree of intent, the most notable for present purposes being certain traffic regulations. These types of "strict liability" or "reduced intent" crimes generally are thought to be on their firmest footing when they involve relatively minor penalties and regulate those aspects of modern life arising from technological advances unknown to the common law. The question that generally is still unsettled in the law today is how far a legislative body can go in dispensing with scienter[3] or diminishing it below what the common law required.
This drift toward reduced scienter has met with criticism, some of it justified. The Pennsylvania Superior Court, for example, extended Morissette[4] to strike down a statute creating a maximum sentence of five years if a driver (a) violated a traffic regulation, and thereby (b) caused the death of another person. The Pennsylvania defendant had been tried under the statute for a form of "homicide" because he made an improper turn in his car and accidentally struck a motorcyclist he did not see, resulting in the motorcyclist's death. Commonwealth v. Heck, 341 Pa.Super. 183, 491 A.2d 212 (1985), affirmed, 517 Pa. 192, 535 A.2d 575 (1987). This statute obviously is both analogous to and less severe than the one at hand, so it deserves some scrutiny.[5]
In examining public policy and constitutional issues, the Pennsylvania Superior Court noted that the foundations of American *512 criminal law rest on the belief that it is the criminal act combined with the culpable mind that deserves to be labeled as "infamous." See id. 491 A.2d at 220. Or as Oliver Wendell Holmes, Jr., once remarked, "even a dog distinguishes between being stumbled over and being kicked." O.W. Holmes, Jr., The Common Law 3 (1881). Severely criminalizing an unintentional act is contrary to the genius of Anglo-American law, which attaches the greater blameworthiness to the crime that rests on guilty intent, not mere carelessness.[6] Criminal statutes that reduce or eliminate traditional scienter therefore should receive greater scrutiny, though they certainly should not be stricken for want of scienter alone.
In this vein, the Pennsylvania Superior Court concluded that a "reduced intent" crime can violate due process in light of the following factors: (a) it imposes a penalty that is not light, but severe; (b) the conviction "gravely besmirches" the reputation of the offender; (c) the crime is one falling within the parameters of the traditional hierarchy of common law felonies, which is to say, those crimes regarded as "infamous." Heck, 491 A.2d at 222. The Pennsylvania court therefore concluded that the particular vehicular homicide statute at issue in Heck ran afoul of the distinction because it (a) imposed a maximum five-year penalty, which is "severe,"; (b) gravely besmirched the character of the offender because he faced lengthy imprisonment; and (c) was a modified version of the common law crime of manslaughter, an "infamous" offense. See id.
Clearly, all the same criteria exist in the instant case. For present purposes, the only relevant distinction between Heck and the case at hand is that the penalty is more severe here. Otherwise, both the Pennsylvania and Florida statutes create a type of vehicular homicide predicated solely on a negligent act associated with a violation of traffic regulations.
I think it also important to consider how cases of this type may implicate precedent dealing with impermissible burden-shifting. The United States Supreme Court repeatedly has noted that a state may not create a presumption that an element of the crime exists as a matter of law and fact. In Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), for example, the Court confronted the case of a person accused of "deliberate homicide." Although the statute obviously included a scienter element ("deliberateness"), the jury nonetheless was instructed that "the law presumes that a person intends the ordinary consequences of his voluntary acts." Id. at 513, 99 S.Ct. at 2453.
The Sandstrom Court made the following observations in finding the instruction and hence the conviction unconstitutional:
The instruction announced to David Sandstrom's jury may well have [invaded the fact finding function]. Upon finding proof of one element of the crime (causing death), and of facts insufficient to establish the [intent element], Sandstrom's jurors could reasonably have concluded that they were directed to find against defendant on the element of intent.
Id. at 523, 99 S.Ct. at 2459. Accord Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).
It is true that Sandstrom is distinguishable from what we are facing today: The Sandstrom Court confronted a State scheme that was self-contradictory, effectively resulting in a complete lack of a scienter requirement in the jury's eyes though the statute purported to require an intent element. Here we are dealing with a statute that does not create an illusory intent element, but creates one that apparently has been reduced to the level of simple negligence.
Nevertheless, the federal burden-shifting cases to my mind pose a distinct problem when the state tries to create "reduced intent" statutes. These federal cases reasonably can be read as saying that the state may not reduce the intent element below a minimum level for certain serious offenses. After *513 all, the difference between creating an illusory intent element and forthrightly abandoning it altogether is really only semantic.
Moreover, I think this Court also must keep in mind that, by affirming a statute criminalizing and severely punishing negligence, we open the door for more such statutes in the future notwithstanding the traditions of American law embodied in the concept of due process. Art. I, § 9, Fla. Const. Any person or group that may be vulnerable to a charge of negligence or malpractice has something to fear from such a holding. It means that even simple acts of negligence could be converted into serious crimes.
The Heck case illustrates the problem: There, a driver improperly made a turn, struck a motorcyclist he did not see, and then was prosecuted for a homicide with up to five year's imprisonment. To my mind, this constitutes a draconian result that is cruel or unusual and a violation of due process within the meaning of the Florida Constitution. Id. I would not equate the actual offense in Heck with the one here, but the statutes viewed by themselves are little different from each other.
Nevertheless, the problems I have outlined easily and constitutionally can be avoided by the adoption of a simple narrowing construction. See State v. Stalder, 630 So.2d 1072 (Fla. 1994). Because the present crime imposes an infamous penalty,[7] I would find that it cannot constitutionally be applied in the absence of at least criminal or "culpable" negligence, as opposed to simple negligence. Accord State v. Ritchie, 590 So.2d 1139 (La. 1991). This means the negligence must be gross and flagrant in character, evincing a reckless disregard of human life or the safety of others.[8]Preston v. State, 56 So.2d 543 (Fla. 1952). I believe this is necessary to make the statute conform to the requirements of Article I, section 9 of the Florida Constitution.
Turning to the facts at hand, I think it obvious beyond any doubt that the conduct of Smith met the standards for criminal negligence in connection with driving with a revoked license. Specifically, he was legally intoxicated, as shown by his contemporaneous conviction for DUI manslaughter. Choosing to drive while legally drunk is itself an act of reckless disregard of the life or safety of others. Coupled with the fact of the revoked license, this recklessness showed that Smith committed a criminal act that falls within the statute even after it is narrowly construed. Accordingly, I concur with the result reached here.
SHAW, J., concurs.
NOTES
[1] Smith was also charged with DUI manslaughter under section 782.07, Florida Statutes (1991). That charge is not at issue in this appeal.
[2] Morissette v. United States, 342 U.S. 246, 251, 72 S.Ct. 240, 244, 96 L.Ed. 288 (1951) (quoting 4 Blackstone's Commentaries 21).
[3] "Scienter," of course, refers to the intent element of a crime. The common law generally required at least reckless disregard for others, while certain common law crimes required the higher level of "general" or "specific" intent.
[4] Morissette involved the Court's attempt to deal with a federal statute that had omitted any statement about a criminal scienter element, not a statute like that one at hand, which seems to place the "scienter" element as ordinary negligence.
[5] The majority above stresses that driving with a revoked license is itself a violation of the law. While this is true, it does not eliminate the real problem here, just as it did not in the Pennsylvania case quoted above. The act of driving with a revoked licensed, like the act of committing a traffic violation in Pennsylvania, is far and away a minor matter compared to homicide. (By contrast, DUI is itself a serious matter because of the serious risk it poses to the others.) Both here and in the Pennsylvania case, the statute does much more than just criminalize a traffic violation: It creates a form of homicide with an "intent" element apparently consisting of simple negligence. The majority argues that the penalty for this new crime is simply a matter of "policy," and that the underlying offense remains the traffic violation. That approach reads the severe penalty here as though it had no constitutional dimension at all and ignores the disproportionate penalties at stake.
[6] It is worth noting that negligent or careless acts still could result in a lawsuit to partially compensate victims for their losses. These lawsuits often can include a claim for punitive damages.
[7] At common law, all felonies were considered "infamous," a fact that finds some reflection in Florida's constitutional provision defining a felony as any crime punishable by death or imprisonment in the state penitentiary. Art. X, § 10, Fla. Const.
[8] Obviously, there are some types of acts that constitute at least recklessness per se. These may include driving under the influence, or improper handling of ultrahazardous substances such as radioactive materials, poisons, or explosives, among others.