702 So.2d 527 (1997)
Charles LEWEK, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1394.
District Court of Appeal of Florida, Fourth District.
October 22, 1997.
Opinion Denying Rehearing December 24, 1997.
*529 Richard L. Jorandby, Public Defender, and Alisa Smith Holden, Special Assistant Public Defender, Law Office of Michael L. Klein, Fort Lauderdale, for appellant.
Richard L. Jorandby, Public Defender, and Alisa Smith Holden, Special Assistant Public Defender of the Law Offices of Michael L. Klein, Fort Lauderdale, Margaret Good-Earnest, *530 Assistant Public Defender, West Palm Beach, for appellant on rehearing.
Robert A. Butterworth, Attorney General, Tallahassee, and Carol Cobourn Asbury, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
Appellant, Charles Lewek ("Defendant"), appeals his two convictions for vehicular homicide following a tragic accident in which a young pregnant mother and her eighteen-month-old son were killed. The Defendant raises several points on appeal, but we need address only three.

A. Whether the Defendant's Rights Were Violated Pursuant to Coney v. State?

The Defendant first argues that his due process rights were violated because he did not participate in jury selection and the trial court failed to certify his waiver of that right on the record. See Coney v. State, 653 So.2d 1009 (Fla.1995). Although defense counsel waived the Defendant's right to be present at the bench conference during which peremptories strikes were exercised, the trial court failed to obtain the Defendant's certification of the jury panel on the record, as required by Coney. See id. at 1012-13. Because the Defendant's due process right to participate in all pertinent aspects of trial was violated, the Defendant is entitled to a new trial. Ellis v. State, 696 So.2d 904 (Fla. 4th DCA 1997).
We reject the State's argument that reversal is unnecessary. The State argues that because the January 1, 1997, amendment to Florida Rule of Criminal Procedure 3.180(b) should be applied retroactively to this case, the Defendant would not receive any additional rights if he were retried on remand. The State's argument assumes that the 1997 amendment will automatically return us to an era of pre-Coney decisions, wherein a defendant would not have the right to be immediately present during the exercise of peremptory challenges. While Florida courts have speculated that this is the effect of the 1997 amendment, see, e.g., Chavez v. State, 698 So.2d 284, 287-88 (Fla. 3d DCA 1997)(en banc)(Levy, J., dissenting), the Florida Supreme Court has not stated as much. Furthermore, consistent with the Florida Supreme Court's repeated statement that the Coney rule is not retroactive, see, e.g., State v. Mejia, 696 So.2d 339 (Fla.1997); Henderson v. State, 698 So.2d 1205 (Fla. 1997); Boyett v. State, 688 So.2d 308 (Fla. 1996), the majority of Florida district courts, including this Court, has specifically held that the 1997 amendment to rule 3.180(b) shall not be applied retroactively. See Ellis, 696 So.2d at 905 n. 1; Chavez, 698 So.2d at 284-86; Goney v. State, 691 So.2d 1133 (Fla. 5th DCA 1997). Accordingly, because the 1997 amendment to rule 3.180(b) is not to be applied retroactively, it cannot affect our decision today.

B. Whether the Defendant Was Entitled to a Judgment of Acquittal for Vehicular Homicide?
The Defendant argues that the trial court erred in denying his motion for judgment of acquittal for vehicular homicide. In moving for judgment of acquittal, a defendant admits all facts introduced into evidence. See, e.g., Fratello v. State, 496 So.2d 903 (Fla. 4th DCA 1986). Every fair and reasonable inference must be drawn in favor of the State. See, e.g., McConnehead v. State, 515 So.2d 1046 (Fla. 4th DCA 1987). The Defendant argues that under this standard, he is entitled to a discharge from his vehicular homicide convictions on the premise that the evidence fails to show he was driving recklessly. See § 782.071, Fla. Stat. (1995)(defining vehicular homicide as the killing of a person by the operation of a motor vehicle in a reckless manner likely to cause death or great bodily harm).
In determining whether the trial court erred in denying the Defendant's motion for judgment of acquittal, we must first explore what actions will constitute reckless driving. Driving recklessly means driving with a willful or wanton disregard for safety. See State v. May, 670 So.2d 1002 (Fla. 2d DCA 1996). "Willful" means "intentional, knowing, and purposeful," and "wanton" means with a "conscious and intentional indifference to consequences and with knowledge *531 that damage is likely to be done to persons or property." W.E.B. v. State, 553 So.2d 323, 326 (Fla. 1st DCA 1989)(quoting Fla. Std. Jury. Instr. (Misd.)(reckless driving)). In other words, the degree of culpability required to prove reckless driving is less than culpable negligence, which is the standard for manslaughter, but more than a mere failure to use ordinary care. See McCreary v. State, 371 So.2d 1024 (Fla.1979); State v. Esposito, 642 So.2d 25 (Fla. 4th DCA 1994). Although the Defendant need not have foreseen the specific circumstances causing the death of the victims, it is sufficient that the Defendant should have reasonably foreseen that the same general type of harm might occur if he knowingly drove his vehicle under circumstances that would likely cause death or great bodily harm to another. See W.E.B., 553 So.2d at 323. Therefore, to determine whether the Defendant was driving recklessly, the question is whether the Defendant could reasonably foresee that if he knowingly drove his vehicle in such a manner and under such conditions as he did, he was likely to cause death or great bodily harm; the victim's conduct is irrelevant unless it was the sole proximate cause of the homicide or unless there is some reason why it would be unjust or unfair to impose criminal liability. See Union v. State, 642 So.2d 91, 92 (Fla. 1st DCA 1994). Thus, the focus is on the defendant's actions, i.e., what are the circumstances under which he knowingly drove, and was it reasonably foreseeable that death or great bodily harm could result.
The admissible evidence in this case, taken in the light most favorable to the State, reveals that the Defendant knowingly drove under the following circumstances. The accident occurred one bright, clear morning in the midst of rush hour traffic at the corner of Haverhill Road and Community Drive in West Palm Beach. At a few minutes past 8:30 a.m., the Defendant, traveling northbound on Haverhill Road, approached the intersection with Community Drive. The Defendant was driving a car with shallow tire tread, a missing lug nut, and window tinting that was too dark and placed too low on the front windshield. While the speed limit on this multi-laned, residential road was 45 miles per hour, the Defendant was traveling at approximately 60 miles per hour. When the Defendant was more than 150 yards from the intersection, the traffic light at Haverhill Road and Community Drive turned yellow. At the time, the victim, Lisa Montague, was facing southbound on Haverhill Road, stopped just inside the intersection waiting to make a lefthand turn to go east on Community Drive. As the Defendant approached the intersection, he did not slow down, but continued traveling in excess of the speed limit. After the traffic light had been red for five seconds, the Defendant accelerated through the intersection, hitting the passenger's side of Lisa's car as she attempted to turn east onto Community Drive. When the Defendant finally applied his brakes an instant before impact, his brakes locked. The estimated at-impact speed of the Defendant's car was approximately 48 miles per hour. Lisa's body was partially ejected through the passenger's side window, her thighs landing upon her eighteen-month-old son and crushing him. Lisa and her son died as a result of this accident.
We conclude that by knowingly driving under these circumstances, the Defendant operated his vehicle in a reckless (i.e., willful or wanton) manner because it should have been reasonably foreseeable to him that death or great bodily harm was likely to result by driving under these circumstances. See, e.g., McCreary, 371 So.2d at 1024; Byrd v. State, 531 So.2d 1004 (Fla. 5th DCA 1988); Hamilton v. State, 439 So.2d 238 (Fla. 2d DCA 1983); Savoia v. State, 389 So.2d 294 (Fla. 3d DCA 1980). Because the admissible evidence shows the Defendant killed two people by operating a motor vehicle in a reckless manner likely to cause death or great bodily harm, the State presented sufficient evidence to establish two prima facie cases of vehicular homicide. Consequently, the trial court did not err in denying the Defendant's motion for judgment of acquittal on the vehicular homicide charges.

C. Whether the Trial Court Abused Its Discretion in Admitting Certain Evidence?
Related to the Defendant's argument that the State failed to establish two prima facie cases for vehicular homicide is his contention *532 that the trial court erred in permitting the State to introduce certain inadmissible evidence. He asserts the trial court erred in admitting opinion testimony from a lay witness, irrelevant testimony regarding the poor condition of his car, and irrelevant evidence that his driver's license was suspended. The other evidence the Defendant finds irrelevant and prejudicial is the testimony concerning the victim's pregnancy.
First, we disagree with the Defendant's contention that the trial court improperly allowed a lay witness to give an expert opinion regarding the approximate speed of the Defendant's car. "An estimate of the speed at which a conveyance or other object was moving at a given time is generally viewed as a matter of common observation rather than expert opinion, and it is well settled that any person of ordinary ability and intelligence having the means or opportunity of observation is competent to testify to the rate of speed of such a moving object." Albers v. Dasho, 355 So.2d 150, 153 (Fla. 4th DCA 1978)(quoting 31 Am.Jur.2d, Expert and Opinion Evidence § 157). But see Lawlor v. State, 538 So.2d 86 (Fla. 1st DCA 1989). A lay witness's opportunity of observation is critical to admissibility regarding the speed of an object because the lay witness's testimony must be grounded in reliability and personal perception rather than speculation. See § 90.701, Fla. Stat. (1995); Martinez v. State, 692 So.2d 199 (Fla. 3d DCA 1997)(lay witnesses permitted to estimate speed of defendant's car as it passed theirs); Fino v. Nodine, 646 So.2d 746 (Fla. 4th DCA 1994)(lay witness could testify regarding speed, but not whether driver could avoid an accident).
Here, the eyewitness to the accident who testified in this case had ample opportunity to observe the Defendant's car and estimate its speed as it passed him. Like the Defendant, the eyewitness was traveling northbound on Haverhill Road. When the light turned yellow, the eyewitness slowed his car to a stop without entering the intersection. The eyewitness testified that as the Defendant passed his car and entered the intersection, the Defendant was traveling approximately 60 miles per hour.
We conclude that the eyewitness's testimony was not an expert opinion, but was a lay opinion, which is generally admissible as to the rate of speed of the Defendant's car. It is clear from the record that the eyewitness had ample time to observe the speed of Defendant's car and that his testimony was not based on speculation, but rather was based upon his observations at the time of the accident. See Martinez, 692 So.2d at 199; Reeves v. State, 647 So.2d 994 (Fla. 2d DCA 1994). Thus, the trial court did not abuse its discretion in admitting the eyewitness's testimony.
Second, on the grounds of irrelevancy, the Defendant argues that testimony that his car was in disrepair at the time of the accident was inadmissible. The instances of disrepair included a shallow tread on the car tires, a missing lug nut from one of the car wheels, window tinting that was too dark and placed too low on the front windshield, missing headlights, mismatched car tires, and a rusted roof liner.
As analyzed above, an essential element the State must prove in a vehicular homicide case is reckless driving, i.e., that the Defendant should have reasonably foreseen that the same general type of harm might occur if he knowingly drove his car under circumstances likely to cause great bodily harm or death of another. See W.E.B., 553 So.2d at 323. In this light, so long as the evidence of the condition of the Defendant's car tends to either prove or disprove whether the Defendant knowingly drove under circumstances that might generally jeopardize others' safety, then the evidence is relevant. § 90.401, Fla. Stat. (1995).
Here, the evidence regarding the shallow tread on the car tires, a missing lug nut, and the improper window tinting is relevant because it tends to prove driving circumstances under which the Defendant could reasonably foresee jeopardizing others' safety. The evidence regarding the missing headlights, mismatched car tires, and the rusted roof liner, however, is not relevant under the facts of this case. Driving on a bright, clear morning with missing headlights is not a circumstance under which it is reasonably foreseeable that *533 death or great bodily harm to others would result. Likewise, neither mismatched car tires nor a rusted roof liner are circumstances under which it would be reasonably foreseeable that others' safety would be jeopardized. Thus, the Defendant, driving in a car on a bright clear morning with missing headlights, mismatched tires, and a rusted roof liner, was not knowingly driving under circumstances that were reasonably foreseeable to result in death or great bodily harm. As such, the relevance of this evidence to the material issues in this case is not supported by the record.
Third, we agree with the Defendant's assertion that the evidence of his driver's license suspension for failing to attend driving school was inadmissible. The State relies on State v. Knight, 622 So.2d 188 (Fla. 1st DCA 1993), in arguing that this evidence is relevant. In Knight, the First District considered whether several factors, including the fact that the defendant's driver's license was suspended at the time of the accident, was sufficient to overcome a motion to dismiss vehicular homicide charges. While the First District concluded that driving with a suspended license was one factor that helped establish a prima facie case of reckless driving against the defendant, the court also noted, "Whether or not a jury would ultimately find or would be justified in finding [the defendant] guilty of vehicular homicide [under these circumstances] is not now our concern." Id. at 190. A motion to dismiss, which was the procedural posture in Knight, does not establish that evidence is relevant because at that point in the proceedings, there has been no evidentiary ruling on the evidence. Because a motion to dismiss does not implicate relevancy of the evidence, see id., we decline to extend Knight to this case, where the relevancy of evidence is at issue.
Instead, we look to the Florida Supreme Court's opinion in State v. Smith, 638 So.2d 509 (Fla.1994). In Smith, the supreme court determined that one's license to drive could be suspended under certain circumstances___such as a conviction for vehicular manslaughter, vehicular homicide, DUI, or some other serious criminal traffic offense___ that would in effect be a determination that the driver is unfit to drive. Id. at 510. The supreme court then held that it would be reckless for a driver to drive while his or her license is suspended for reasons that are in effect a determination of the driver's incompetence to drive. Id. at 510-11.
In the case at hand, the record reflects that the Defendant's driver's license was not suspended for conduct evincing driving incompetence, but rather, because the Defendant failed to attend driving school. Thus, the record fails to show a determination that the Defendant is inherently unfit to drive while his license is suspended. As such, the record necessarily fails to show that the Defendant's decision to drive with a suspended license was reckless. Accordingly, under the circumstances of this case, we conclude the evidence of the Defendant's suspended license for failure to attend driving school is irrelevant to the material issue of whether the Defendant knowingly drove under circumstances likely to cause death or great bodily harm to others.
Finally, the Defendant argues that the testimony concerning the victim's pregnancy was irrelevant and highly prejudicial. Prior to trial, the Defendant moved in limine to exclude any mention of Lisa's pregnancy during the trial. The trial court granted the Defendant's motion in limine in part and ruled that while the fact of Lisa's pregnancy could be introduced into evidence, evidence of Lisa's due date was not admissible. The trial court based its ruling on a representation by the State that the evidence would show Lisa's son was crushed by her abdomen.
At various points during trial, two witnesses mentioned that Lisa was pregnant, one observing that while the paramedics were treating Lisa, the fetus moved a great deal. The State argues that the fact of Lisa's pregnancy is relevant because the weight of her pregnant abdomen killed her eighteen-month-old son by crushing him. However, there is no record evidence establishing that Lisa's abdomen is the portion of her body that crushed her son. The record shows only that the weight of Lisa's body crushed her son, and in fact, eyewitnesses to the accident testified that Lisa's thighs, not *534 her abdomen, were found on top of the eighteen-month-old's body. Thus, we conclude that the evidence of the victim's pregnancy was irrelevant because it neither proves nor disproves any material issue in the case, and as such, it should have been excluded. See § 90.401.
A third trial witness, Lisa's mother, testified not only about the fact Lisa was pregnant, but also about her due date. The State called Lisa's mother to the witness stand and asked her whether Lisa was driving the day before the accident when she and Lisa were shopping. Lisa's mother began to answer, but sensing that she was about to testify regarding Lisa's impending delivery, defense counsel objected in mid-sentence of her testimony. Persuaded by the State's plea to allow Lisa's mother to finish her answer, however, the trial court overruled the Defendant's objection. It was then that Lisa's mother blurted out that she and Lisa had been shopping for "items for the baby, which was to be born in three days." The Defendant moved for a mistrial, which the trial court denied.
Prior to deliberation, the trial court instructed the jury that Lisa's "pregnant condition or the term of her pregnancy have no relevance to this case and are not to be considered by you in your deliberations." It is obvious from this instruction to the jury that the trial court essentially reversed its earlier position on the admissibility of Lisa's pregnancy and came to the conclusion that neither the victim's pregnant condition nor the due date of her pregnancy was relevant. Contrary to the State's argument, given the unduly inflammatory nature of the testimony of Lisa's mother, no instruction to the jury could cure the prejudice. As the Fifth District noted when considering a similar question, the evidence regarding Lisa's pregnancy is so inflammatory and so prejudicial that only a mistrial could have been the proper remedy. Vaczek v. State, 477 So.2d 1034 (Fla. 5th DCA 1985). Not only did the introduction of the term date of Lisa's pregnancy violate a portion of the trial court's own ruling in limine, but such testimony was unduly prejudicial and could only be calculated to play upon the jury's passions and evoke sympathy for the tragic victims of this accident. Consequently, we agree with the Defendant's contention that the curative instruction was insufficient and that the trial court erred in not declaring a mistrial.

D. Conclusion
In sum, we reverse the Defendant's convictions on two counts of vehicular homicide and remand the case for a new trial, finding that the Defendant's due process rights were violated under the terms enunciated in Coney v. State. Pursuant to the State's request, however, we certify the following question of great public importance:
WHETHER THE 1997 AMENDMENT TO FLORIDA RULE OF CRIMINAL PROCEDURE 3.180(b) SHOULD BE APPLIED RETROACTIVELY?
Additionally, we conclude that the State presented a prima facie case of vehicular homicide sufficient to overcome the Defendant's motions for judgment of acquittal. These facts, if believed by the jury, are sufficient to support a jury's finding that the Defendant knowingly drove under circumstances likely to cause great bodily harm or death. We further conclude that with the exception of the missing headlights, mismatched car tires, and rusted roof liner on the Defendant's car, the other evidence of his car's condition was relevant. Defendant's suspended driver's license, however, was irrelevant. Finally, the evidence regarding the victim's pregnancy was both irrelevant and unduly prejudicial, and the trial court erred in denying the Defendant's motion for mistrial. All other issues raised by the Defendant on appeal are affirmed.
REVERSED AND REMANDED FOR A NEW TRIAL.
GUNTHER and DELL, JJ., and HENNING, PATTI ENGLANDER, Associate Judge, concur.

ON MOTION FOR REHEARING
PER CURIAM.
The State moves for rehearing on the issue of whether the suspension of the Defendant's drivers license for failing to attend driving school was relevant to the charge of vehicular *535 homicide. We deny the State's motion for rehearing. Our previous opinion remains unchanged, subject to the following clarification.
As our opinion states, we concluded that under the circumstances of this case, the suspension of the Defendant's driver's license was irrelevant to prove whether he knowingly drove under circumstances likely to cause death or great bodily harm to others. We came to this conclusion because the record failed to reflect that the Defendant's driver's license was suspended pursuant to a court order for reasons that are in effect a determination of the Defendant's inherent incompetence to drive. See State v. Smith, 638 So.2d 509 (Fla.1994); see also §§ 316.655, 322.26(8), 322.27(2), 322.28(2), 322.28(5), Fla. Stat. (1995). This conclusion, however, does not preclude the State from seeking to admit this evidence on remand if it could show on the record that the suspension was court-ordered under circumstances that reflect a court's determination that the Defendant is unfit to drive. See Smith, 638 So.2d at 510.
Motion for rehearing DENIED.
GUNTHER and DELL, JJ., and HENNING, PATTI ENGLANDER, Associate Judge, concur.