702 So.2d 1373 (1997)
Timothy WAITES, Appellant,
v.
STATE of Florida, Appellee.
No. 96-2178.
District Court of Appeal of Florida, Fourth District.
December 31, 1997.
Bruce A. Zimet and Erica J. Massaro of Bruce A. Zimet, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Barbra Amron Weisberg, Assistant Attorney General, West Palm Beach, for appellee.

SUA SPONTE CLARIFICATION
SHAHOOD, Judge.
We sua sponte grant clarification of this court's prior opinion issued on November 19, 1997, and substitute the following opinion in its place.
Appellant, Timothy Waites, appeals his conviction and sentence for operating a motor vehicle without having a driver's license, as required under Florida Statutes 322.03(3)(b), in a careless and negligent manner resulting in the death of another human being in violation of Section 322.34(3)(a), Florida Statutes. In addition, he appeals his simultaneous revocations of probation for seven prior felonies. We reverse appellant's conviction and sentence, and remand the seven revocations of probation for further hearing consistent with this opinion.
On March 16, 1995, appellant drove a truck owned and maintained by appellant's employer in Palm Beach County. At the end of the *1374 work day, appellant, while driving through a busy intersection, collided with an automobile, killing the driver of the auto. Appellant's defense relied heavily on the "brake failure" of his vehicle.
Appellant possessed a Class D driver's license issued by the State of Florida. The Class D license is the current corresponding equivalent to the pre-1990 "chauffeur's license." In 1990, Florida revised its driver's license categories, and introduced the current "Commercial Driver's License" system. Under the previous system, appellant's Class D license would have allowed him to drive the vehicle in question, but under the current system, a Class B license is now required. Currently, Class D is restricted to vehicles weighing 26,000 pounds or less. Vehicles weighing at least 26,001 pounds require a Class B license. See § 320.54(2)(a), Florida Statutes (1995). The required class is determined by the highest of the truck's "gross vehicle weight rating," its "declared weight," and its "actual weight." Id. Hence, the truck at issue, which had a registered gross vehicle weight of 25,900 pounds, an actual weight of 15,450 pounds, and a manufacturer's gross weight rating of 29,500 pounds, would require a Class B driver's license. At the scene of the accident, however, appellant told a police officer that he believed that he possessed the appropriate license.
Testimony was presented that the Department of Motor Vehicles (DMV) extensively advertised the new license classifications from April 1, 1990 until March 31, 1991 by television, radio, newspaper, and posters throughout the state. In addition, notification was mailed to all chauffeur's-license holders, although it could not be proven that appellant himself was actually mailed this notice. The revised scheme also appears on the back of every driver's license. The DMV's records establish that appellant was re-issued driver's licenses at least five times between 1985 and 1994all of which were chauffeur's licenses or Class D licensesbut that none of appellant's trips to a DMV office took place during the campaign to advertise the revised system.
The trial court found appellant guilty as charged. As to the invalidity of appellant's driver's license, the court stated:
I am convinced from the evidence that Mr. Waites did not have the proper driver's license at the time and was in violation of the commercial driver's license requirements, which is his obligation to comply with.
As to the element of negligence, the court explained:
To suggest ... that it was just a simple brake failure and, therefore, it wasn't his fault, sort of begs the question, it was, in fact, Mr. Waites own statement, which I find to be the most damning evidence, that he knew that he had a large commercial vehicle with a brake problem, and he took it out on the highway in rush hour traffic. I don't know what could be more negligent and dangerous in the operation of a motor vehicle, than that. And but for his operation of that vehicle, we would not have a deceased victim in this case.
Section 322.34(3), Florida Statutes (1995), provides in pertinent part as follows:
(3) Any person who operates a motor vehicle:
(a) Without having a driver's license as required under s. 322.03; or
(b) While his or her driver's license or driving privilege is canceled, suspended, or revoked pursuant to s. 316.655, s. 322.26(8), s. 322.27(2), or s. 322.28(2) or (5),
and who by careless or negligent operation of the motor vehicle causes the death of or serious bodily injury to another human being is guilty of a felony of the third degree, punishable as provided in s. 775.082 or s. 775.083.
In State v. Smith, 638 So.2d 509 (Fla. 1994), the Florida Supreme Court addressed the constitutionality of section 322.34(3)(b). Although the instant case involves subsection (a) rather than subsection (b), Smith sets forth some of the principles that govern this appeal. Smith begins by stating the general proposition that statutes criminalizing "simple" negligence have been ruled unconstitutional in the past. Id. at 510; see State v. Hamilton, 388 So.2d 561 (Fla.1980); State v. Winters, 346 So.2d 991 (Fla.1977). However, simple negligence may be used "to enhance the penalty for a willful criminal *1375 act." Smith, 638 So.2d at 510. Thus, Smith explained that section 322.34(3)(b) is constitutional since the negligent operation of a vehicle merely enhances the penalty for the willful act of knowingly driving with a suspended, cancelled, or revoked license:
Only when a driver's license has been suspended, canceled, or revoked due to some wrongdoing on the part of the driver can a person be charged under section 322.34(3)[(b)]. For instance, only persons who have had their driver's licenses suspended, canceled, or revoked pursuant to sections 316.655 (suspension due to conviction of traffic offenses), 322.26(8)(suspension by a court due to conviction of serious traffic offense), 322.27(2)(suspension by the Department of Highway Safety and Motor Vehicles due to conviction of serious traffic offense), 322.28(2)(suspension for driving under the influence), or 322.28(5)(suspension due to conviction of manslaughter or vehicular homicide), are subject to prosecution under the statute at issue. Consequently, when a person is charged under [subsection (b)], a determination already has been made that the person is no longer fit to be driving on Florida's highways. As such, knowingly driving with a suspended, canceled, or revoked driver's license, as defined under the statute at issue, is indeed a willful act in clear violation of the law.

zl
[I]t is not the simple negligence of the driver that is the criminal conduct being punished; it is the willful act of choosing to drive a vehicle ... with a suspended, canceled, or revoked license that is the criminal conduct being punished.... [T]he legislature has simply made a policy decision that anyone who engages in the prohibited criminal conduct and who, while engaging in that prohibited criminal conduct, negligently injures another, is guilty of a more severe crime than if the prohibited conduct had not resulted in injury to another.
Id. (emphasis added).
It is implicit in Smith that the statutory element of simple negligence that results in death is not criminal in itself, but is merely an "enhancement" to the independently punishable act of "knowingly driving with a suspended, canceled, or revoked driver's license" under subsection (b), which is "a willful act in clear violation of the law." Id.
In this case, subsection (b) is inapplicable; thus, the punishable conductwhich the negligent conduct will enhancemust be found in subsection (a). Unlike the conduct described in subsection (b), however, the conduct in subsection (a) will not necessarily be committed knowingly. While the suspensions, revocations, and cancellations described in (b) all follow "a determination ... that the person is no longer fit to be driving on Florida's highways," Smith, 638 So.2d at 510, this case is a prime example of how one can unwittingly drive without a valid license; in this case, the DMV modified the driver's license classification scheme after appellant's original license was issued, rendering the one-time valid license invalid for the purposes for which appellant used it.
Although subsection (a) does not expressly require that the accused know of his license's invalidity, we hold that this provision is properly construed as prohibiting only "knowingly" driving with an invalid license. We first note that "[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American jurisprudence," and that strict liability crimes are "disfavored." See Chicone v. State, 684 So.2d 736, 743 (Fla.1996) (quoting Dennis v. United States, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951)). Accordingly, in strictly construing criminal statutes in favor of the accused, a mens rea requirement is dispensed with only upon a "clear statement" from the legislature that scienter is not an essential element of the offense. Id. at 742 (quoting Staples v. United States, 511 U.S. 600, 617-18, 114 S.Ct. 1793, 1803, 128 L.Ed.2d 608 (1994)). We can discern no indication that the legislature intended to dispense with a mens rea requirement in enacting section 322.34(3)(a). Furthermore, the harsh sanction of five years imprisonment imposed in this case further militates against treating section 322.34(3)(a) as a strict liability crime. See Smith, 638 So.2d at 513 (Kogan, J., concurring)(characterizing a five-year sentence for the "reduced intent" offense of making an improper left *1376 turn and accidentally killing a motorcyclist as "a draconian result that is cruel or unusual and a violation of due process within the meaning of the Florida Constitution"). Accordingly, we hold that the State had the burden below of establishing that appellant's operation of a vehicle with an invalid license was willful.
The State submits that the legislature has expressly provided for "constructive notice" of the revised licensing scheme. Florida Statutes section 322.58, which governs the transition from the "old chauffeur's license" to its current Class D counterpart, provides in part:
The failure of the department [of Highway Safety and Motor Vehicles] to notify a person of the requirement to be relicensed under a classified driver's license system shall not be a defense to any violation of law regulating the operation of motor vehicles in this state.
§ 322.58(3), Florida Statutes (1995).
In construing this provision most favorably to appellant,[1] we do not read this section as affecting the essential elements of the charged offense so as to permit a conviction to be based on "constructive notice" of the license's invalidity; rather, we read this provision as merely precluding the defendant from raising the "defense" that he was not personally notified by the DMV of the need to be relicensed. This bar to raising a particular defense cannot negate the State's burden of establishing every essential element of the charged offenseincluding appellant's willfulnessbeyond a reasonable doubt. See In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). We conclude that, under the facts and chronology of events of this particular case, the State failed to meet its burden of proving that appellant knew of his license's invalidity; on the contrary, the unrebutted evidence was that appellant believed that he possessed the appropriate license.
We reverse and remand appellant's conviction and sentence for operating a motor vehicle in violation of section 322.03(3)(b), in a careless and negligent manner resulting in the death of another human being in violation of section 322.34(3)(a) and direct that he be discharged as to this charge.
We remand the violation of probation charges to the trial court to determine whether the charges are founded on a violation of section 322.03(3)(b), Florida Statutes, or whether the affidavit of violation encompasses allegations of conduct sufficient to support a violation of probation without regard to violation of that statute. If the charges are founded only on a violation of section 322.03(3)(b), then and in such event appellant's probations must be reinstated. If, on the other hand, the affidavit of violation contains allegations of conduct sufficient to support a violation of probation without regard to violation of that statute, then and in such event the trial court may proceed with a violation of probation hearing.
REVERSED IN PART; REMANDED IN PART WITH DIRECTIONS.
STONE, C.J., and POLEN, J., concur.
NOTES
[1] The codified rule of lenity provides:

The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
§ 775.021(1), Florida Statutes (1995).